## Appeal of the City of Philadelphia, Trustee, Guardian of the estate of John M. Eisler.

A testator provided in his will, *inter alia*, as follows; "I desire all my other estate real, personal and mixed, shall as soon after my decease as practicable be sold and the proceeds arising therefrom be invested in first bonds and mortgages and the interest arising therefrom shall be paid to my wife . . . . . and I do hereby authorize and empower my executrix to sell or dispose of my real estate . . . . . and to make good and sufficient deeds therefor." The executrix sold the real estate and filed her account. *Held*, on distribution, (*a*) that the will worked an equitable conversion of the real estate. (*b*) That the sale of the real estate worked an actual conversion of it. (*c*) That the money arising from the sale having been brought into court should be distributed as money and was liable for the testator's debts.

March 29th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia county:* Of July Term, 1885, No. 121.

Appeal of the City of Philadelphia, trustee under the will of Stephen Girard, guardian of the estate of John M. Eisler, a minor, from the final decree of the Orphans' Court of Philadelphia County, in the estate of Jacob F. Silber, deceased, sustaining exceptions to the adjudication of the Auditing Judge, in the distribution of the funds in the hands of the executrix as per her account filed.

The following are the facts of the case as they appeared before the Auditing Judge, HANNA, P. J.

On March 17th, 1877, the Orphans' Court appointed David F. Krail guardian of the estate of John M. Eisler *et al.* minors.   Security was ordered in the sum of $3.000, and Jacob F. Silber became security for the faithful performance by Krail of his duties as guardian.

Krail entered upon his duties as guardian, and collected moneys belonging to the minors.   He died insolvent about November, 1882, never having filed an account.   His widow and administratrix filed the account of the deceased guardian, which was audited by the Orphans' Court, and a balance of $421.10 found to be due the minor, John M. Eisler, which was awarded to the City of Philadelphia, trustee, &c., his present guardian.   Upon the settlement of the estate of the deceased guardian a claim was made for the amount due the minor, but only a *pro rata* dividend of $54.43 was awarded, leaving a balance still due of $366.67.

Jacob F. Silber, the surety, died November 8th, 1877, leaving a will, by which he directed his real estate No. 1238 North Second street, and No. 2217 North Fourth street, to

remain unsold during the widowhood of his wife. All his other real estate he desired to be sold as soon after his decease as practicable, and the proceeds invested, and the income paid to his wife, so long as she remained his widow, and he authorized and empowered his wife, the sole executrix, to sell his real estate, except the two properties mentioned, at public or private sale, &c. In pursuance of this power and direction the executrix sold real estate on Kensington avenue, and filed her account of the proceeds. Upon the audit of the account a claim was made for $366.67, the balance due the minor's estate by his deceased guardian. The claim was allowed, and the entire balance appearing on the account, $248.14, less the Orphans' Court costs, was awarded to the appellant.

The following is the adjudication:

No objection was made to the account.

Testator died November 8th, 1877, leaving a will duly proved, by which he directed his real estate No. 1238 N. Second street, to remain as a store and dwelling, and his business to be carried on by his wife, so long as she may deem best, and she remains his widow.

He further desired his property No. 2217 N. Fourth street to remain unsold and the income paid to his wife, so long as she remains his widow.

By the next item of his will he desired all his other real estate to be sold as soon after his decease as practicable, and the proceeds invested and the income paid to his wife, so long as she remained his widow, etc.

And to carry out this purpose he authorized and empowered his wife, the sole executrix, to sell his real estate, except the two properties mentioned, at public or private sale, etc.

In pursuance of this power and direction accountant has sold some of the real estate, and now accounts for the proceeds.

The only claim presented was that of the City of Philadelphia, as guardian of John M. Eisler, to recover against testator upon the bond entered into by him as surety of David F. Krail, now deceased, who was guardian of said minor.

It was admitted that testator became the surety; that the guardian died insolvent; that his estate was settled by his administratrix, and of the sum found to be due his ward, viz.:  .   .   .   .   .   .   .   .   $421 10
Only the sum of   .   .   .   .   .      54 43
Was paid to his successor,
Thus leaving the balance of   .   .   .   $366 67
With interest from February 19th, 1884, due the estate of the minor.

This is now presented as a claim against the estate of testator.

Mr. Tull objected to the payment of the claim for the reason that the testator having been dead more than five years it was not such a debt against the real estate as could now be paid, as it had lost its lien against the real estate from lapse of time. And further, there was no conversion by the will, and the proceeds of sale must go to the devisees of the land.

In the opinion of the Auditing Judge it was unnecessary to consider the question of equitable conversion, and it may be conceded that the claim made is not a lien upon the land sold. A purchaser takes it clear of any lien, and it might have been sold by accountant at private or public sale, but still she is obliged to account for the moneys realized, and the same are to be applied to payment of decedent's debts, whether liens of record or not, provided they are not barred by the Statute of Limitations.

Here is a debt, admittedly due by testator and unpaid, and surely any moneys in the hands of the administrator, whether from real or personal estate, should be applied to its payment.

A sale of real estate could not be authorized to pay this debt, but if sold to pay any debts which are a lien, it may come in for payment out of the proceeds of sale.

This is of common occurrence. The claim is, therefore, allowed.

| | |
|---|---|
| Balance due estate per account . . . . | $248 14 |
| From which deduct Clerk O. C. costs . . | 7 50 |
| Balance . . . . . . . . . . . | $240 64 |

Which is awarded to F. E. Brewster and Hon. F. Carroll Brewster, attorneys for the city of Philadelphia, as guardian of John M. Eisler, a minor, on account of his above claim.

And now, April 13th, 1885, it is ordered and decreed that the balance in the hands of accountant be distributed and paid as above awarded, and the annexed account be confirmed *nisi* upon payment of the clerk's costs.

The widow and heirs of the decedent filed the following exceptions:

Now, April 20th, 1885, comes Joseph L. Tull, counsel for widow and heirs of said decedent, and excepts to the adjudication filed by the Auditing Judge, sur account of the executrix of said estate, and assigns the following reasons therefor:

1. Because the Auditing Judge erred in deciding that the proceeds of the sale of real estate sold by said executrix after five years of decedent's death, are to be applied to the payment of decedent's debts, whether liens of record or not.

2. Because the Auditing Judge erred in deciding that the debt of the testator proved that the audit could be paid out of the funds in the hands of the executrix, being the proceeds of the sale of real estate sold after the testator had been dead over five years.

3. Because the Auditing Judge erred in awarding the sum of $240.64 to the city of Philadelphia, guardian of John M. Eisler, a minor.

4. Because the Auditing Judge erred in not awarding the said sum to the widow and heirs of said testator under the terms of his last will and testament.

The court *in banc* sustained the exceptions and made the following decree:

May 23d, 1885. And now above exceptions having been argued by counsel and considered by the court, it is ordered and decreed that the same be sustained. And the adjudication is corrected and modified as follows:

1. The claim of the city of Philadelphia as guardian is disallowed.

2. The balance in the hands of the accountant, after the payment of costs, viz., $240.64, is awarded to her for life, in accordance with the will of testator.

3. And said adjudication as corrected is confirmed.

The city of Philadelphia, trustee, guardian of John M. Eisler thereupon took this appeal, assigning this decree for error.

*Francis E. Brewster* and *F. Carroll Brewster*, for appellant. —It is submitted that the direction to sell all the real estate unexcepted constituted beyond all question an equitable conversion into personalty on the death of the testator: Allison *v.* Wilson, 13 S. & R., 330; Morrow *v.* Brenizer, 2 Rawle, 185; Burr *v.* Sim, 1 Whart., 252; Silverthorn *v.* McKinster, 12 Pa. St. R., 67; Parkinson's Appeal, 32 Id., 455; Wilson *v.* Shoenberger, 34 Id., 121; McClure's Appeal, 72 Id., 414; Evans' Appeal, 63 Id., 183; Land's Appeal, 85 Id., 339; Roland *v.* Miller, 11 W. N. C., 431.

In Eby's Appeal, 84 Pa. St. R., 241, it was held that land directed to be converted into money is regarded as money.

An intent to create from the blended realty and personalty a fund in money for purposes of distribution is equivalent to an express direction to sell: Lardner's Estate, 39 Leg. Int., 440.

The learned Auditing Judge did not deem it necessary to consider this question of conversion, for as the executrix actually sold the land under the power contained in the will and brought the proceeds before the Orphans' Court for distribu-

[Appeal of City of Philadelphia, Trustee, &c., of J. M. Eisler.]

tion, he held that the claim of the city as guardian, though no longer a lien on the land itself in the hands of a purchaser, was a valid claim against the proceeds of the land. In reversing this finding the court *in banc* clearly erred.

Where land is actually sold under a power in the will for the payment of testator's debts, there is a conversion out and out: Wharton *v.* Shaw, 3 W. & S., 124; Willing *v.* Peters, 7 Pa. St. R., 287.

An actual sale under a power, effects an equitable conversion into personalty: Scheidt's Estate, 1 Leg. Chron., 25.

*Joseph L. Tull*, for appellee.—In Lehman's Appeal, 9 Out., 141, Mr. Justice PAXSON says: "It ought to be settled by this time, that in order to work a conversion there must be either—1st. A positive direction to sell; or, 2d. An absolute necessity to sell, in order to execute the will; or, 3d. Such a blending of real and personal estate by the testator in his will, as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money."

There is no positive direction in the will to sell. A discretionary authority to sell the real estate when the trustee deems advisable does not work an equitable conversion: Page's Estate, 25 P. F. S., 87; Elwin *v.* Elwin, 8 Vesey, 547; Swift's Appeal, 6 Norris, 502; McClure's Appeal, 22 P. F. S., 414.

In Trinity Church *v.* Watson, 14 Wr., 528, AGNEW, J., said: "No case brought to my notice, or of which I have any knowledge, has ever decided that a general direction to sell real estate for the payment of debts not ascertained or identified, will extend the lien of these debts indefinitely without suit or notice by filing a copy under the Act of 1834.

Mr. Justice PAXSON delivered the opinion of the court, May 10th, 1886.

We are of opinion that the will of Jacob F. Silber worked a conversion of his real estate. By the fourth item of said will the testator said: "I desire all my other estate, real, personal or mixed, shall, as soon after my decease as practicable, be sold, and the proceeds arising therefrom be invested in first bonds and mortgages," &c., &c. We regard this as a direction to sell. The words "I desire" are the equivalent of the words "I will" that my real estate shall be sold, &c., while the added words, "as soon after my decease as practicable," left no discretion to his executors excepting as to the matter of time. It does not authorize them to postpone a sale altogether. Besides, he makes no other disposition of the real estate.

The auditing judge did not discuss the question of equitable conversion, for the reason that the sale by the executors worked an actual conversion, and the money having been brought into court was to be distributed as money, and was liable for the testator's debts, of which the claim of the appellant was one. In this we think he was clearly right, and that it was error in the learned court to sustain the exceptions to his adjudication.

> Decree reversed at the costs of the appellee, and the adjudication is confirmed.