## RAMSEY *et al. v.* HANLON *et al.*

*(Circuit Court, W. D. Pennsylvania.* November 28, 1887.)

1. CONVERSION—OF REALTY UNDER WILL—DIRECTIONS.

A testator after devising his real estate to his wife for her life, provided by his will as follows: "After the death of my said wife I allow all my estate to be disposed of at public sale, and as soon as the proceeds of the sale is collected it is my will that the amount be equally divided between my daughters, share and share alike, viz., Polly, Nancy, Sarah, and Rachel." He made no other disposition of his real estate. *Held,* that the words "*I allow*" were used in the sense of positive direction, and the will worked an equitable conversion of the real estate.

2. SAME.

This conversion took place at the death of the testator, when, *eo instanti,* the shares of the daughters passed to them as personalty.

3. SAME—UNDER WILL—SHERIFF'S SALE—ACT PA. FEBRUARY 24, 1834.

The real estate having been taken in execution and sold by the sheriff upon a judgment against the testator's personal representative alone, without joining the heirs or his said daughters, or first warning them by *scire facias,* agreeably to the Pennsylvania Act of February 24, 1834. which requires heirs or devisees to be made parties in order to charge their real estate with the payment of the decedent's debts, in ejectment by the daughters after the widow's death, *held,* that by reason of the conversion effected by the will the act was not applicable, and the sheriff's vendee took a good title.

At Law. Action of ejectment by Mary Ramsey and others against Alexander Hanlon and John Hanlon, to recover certain real estate which had been taken in execution and sold on a judgment against the personal representative without joining the heirs or devisees.

*Ramsey & Maxwell, W. B. Rodgers,* and *George S. Hart,* for plaintiff.

*M. C. Acheson* and *Brown & Stewart,* for defendants.

ACHESON, J. The only ground upon which the plaintiffs question the title acquired by the purchaser at the sheriff's sale is that the sale was under a judgment against Sarah McCreery, executrix of William McCreery, deceased, without joining the heirs or devisees, or warning them by *scire facias,* as required by the thirty-fourth section of the act of assembly of February 24, 1834. Purdon, 530 pl. 112. But if, as the defendants contend, the will of William McCreery worked an equitable conversion of his real estate into personalty, then it is clear that the act

has no application to the case. *Leiper* v. *Thomson*, 60 Pa. St. 177. Did the will effect such a conversion? I am of the opinion that it did. Providing for the disposition of his estate upon the decease of his widow, the testator directs as follows: "After the death of my said wife, I allow all my estate to be disposed of at public sale, and as soon as the proceeds of the sale is collected, it is my will that the amount be equally divided among my daughters, share and share alike, as follows, viz., Polly, Nancy, Sarah, and Rachel; and should any of them be dead before such distribution, then an equal distribution among the survivors." Now, manifestly, the words "I allow" are here used in the sense of positive direction, for without the sale the testator's expressed intention in respect to distribution could not be carried out. This interpretation is strongly confirmed by comparing the foregoing provision with a subsequent clause of the will, viz.: "Should my said wife Sarah, at any time after my death get married, it is my will that as soon after such marriage that my estate be sold and distributed in the same manner as above provided for at the time of her death, giving to my said wife her legal dower, and no more." Thus hath the testator himself signified that he used the expression "I allow" as the equivalent of "I will." Furthermore, the testator has made no other disposition of his real estate. Presumably, a partial intestacy was not within his contemplation. Without a sale of the real estate, the scheme of the will, indeed, would be frustrated.

There is no lack of authority to support the conclusion that a conversion was here intended. *Roland* v. *Miller*, 100 Pa. St. 47; *Pyle's Appeal*, 102 Pa. St. 317; *Hunt's Appeal*, 105 Pa. St. 128; *Appeal of the City of Philadelphia*, 112 Pa. St. 470, 4 Atl. Rep. 4.

The plaintiffs, however, insist that there was no conversion, at any rate, until the death of the widow; and hence, at the time of the sheriff's sale, the land retained its character of real estate. But it is well settled, at least in Pennsylvania, that the principle of equitable conversion applies notwithstanding the period of sale is remote, and the actual conversion cannot be made until the time arrives. *Rinehart* v. *Harrison*, Baldw. 177; *Parkinson's Appeal*, 32 Pa. St. 455; *Leiper* v. *Thomson*, supra. In *Parkinson's Appeal*, supra, although the real estate was devised to the testator's wife for life, and the sale for the purpose of distributing the proceeds among the children was postponed until after her death, it was yet held that, as regards the children, the conversion took place at the testator's death, when, *eo instanti*, their shares passed to them as personalty. So here, as respects the plaintiffs, the conversion from realty to personalty occurred at the death of William McCreery.

Election to hold the land as realty is out of the case. No evidence thereof was offered. That no such effect can be attributed to the bringing of this action is quite clear. Certainly no such election was open to the plaintiffs, after the sheriff's sale.

The court then being of the opinion that the purchaser at the sheriff's sale, under whom the defendants claim, took the whole title formerly of William McCreery to the land in controversy, the finding must be in favor of the defendants.

And now, November 28, 1887, the court finds in favor of the defendants, and it is ordered that judgment upon the finding of the court be entered in favor of the defendants, with costs.