Canfield *v.* Canfield.

John D. Canfield et al., executors,

*v.*

Isaac N. Canfield et al.

[Filed November 16th, 1901.]

1. A will directed the executors to reserve the sum of $5,000 for a monument, authorized expenditures for a fence and certain inscriptions, and concluded by empowering them "to expend for the above purposes the sum of $5,000, and no more."—*Held*, not to require the expenditure of the entire $5,000 for the purposes named, but only that a greater sum should not be used.

2. *Held, also,* that if the will required the expenditure of the whole $5,000 for the purpose named, the residuary legatees would not be benefited by the non-compliance with its conditions, but the executors would still be bound to carry out its directions, notwithstanding the erection of the cheaper monument.

3. Where one of the residuary legatees in a will dies before the testator, under the peculiar language of the will, his share does not go to the other residuary legatees, but the testator dies intestate in respect thereto.

4. A will directed that certain land be sold after the death of the testator's wife, and that the money be divided among the residuary legatees, and the estate was so converted. The share of one of such legatees in the proceeds of the sale had, however, lapsed by her death before that of testator.—*Held*, that the purpose of the conversion having failed, such share should be treated, for the purposes of distribution, as real estate, and not as personalty, and should go to the heir-at-law.

5. Under the Wills act, section 34 (*Gen. Stat. p. 3763*)—*Held*, that the widow of testator's brother was not within the act, and that a devise to her lapsed by her death before that of the testator.

---

*Mr. Alfred E. Mills,* for the complainants.

*Mr. Mahlon Pitney,* for Charlotte I. Shelton et al.

*Mr. Joseph Hinchman,* for Cornelia C. Woodward.

*Mr. Philander B. Pierson,* for Isaac N. Canfield.

STEVENS, V. C.

The questions to be decided arise upon the will and codicil of Alfred W. Canfield, who died in 1871.

By the codicil he directed his executors to reserve the sum of $5,000, to be expended by them in building a monument. He recited that he was part owner of a lot in Evergreen Cemetery, and he authorized his executors to erect it upon that lot, or, if they should not deem it advisable to erect it there, upon another lot to be purchased by them. He also authorized expenditure for a fence and certain inscriptions, and he concluded as follows: "I authorize and empower my executors and the survivor of them to expend for the above purposes the sum of $5,000 and no more."

This monument was not to be erected until the death of his wife, the postponement being manifestly for her benefit, but, with the concurrence of herself and the family, the executors (she being one) put up on the lot of which he was part owner a monument costing $625. No other expenses were incurred. The question is whether the executors were under a legal obligation to expend the whole of the sum of $5,000 for the purposes mentioned, and if not, to whom the unexpended balance belongs.

I think it was not the intention of the testator to require the expenditure for this one object of the full sum of $5,000. He intended that the monument, lot, fence and inscriptions should not together exceed $5,000. He says this in so many words, but he does not say that this sum *must* be spent if neither lot, fence nor inscription were necessary. He had no definite sum in mind for the cost of the monument alone. This might have been greater or less, as the cost of the other things was more or less. Again, he *"reserves"* the sum of $5,000, to be expended in building the monument "as hereinafter directed." There is no explicit direction to dispose of all the money in that way only. The final direction is that they "are authorized and empowered" to expend that sum and no more. On the whole, I do not think that, taking this obscurely-worded codicil as a whole, it requires such a construction as to compel the expenditure of more money than is reasonably sufficient to effect the object which testator had in view, viz., the erection of a suitable granite monument,

laid upon a foundation six feet in depth, properly inscribed and protected. This object, it is conceded, has been attained, and the work has been done under the direction of the widow to whom he gave, with a trifling exception, the enjoyment of all his property for her life, and in whom he had, presumably, the fullest confidence.

If this is not the proper construction of this codicil the residuary legatees would not be benefited, as some of them appear to have supposed they would. No intestacy would result. It would still be possible to carry out the direction of the will in this regard, and the executors would be bound to do it if the testator had, in fact, required it; but I do not think he has.

The other question is whether the share of one of the residuary legatees, the widow of testator's brother William, she having predeceased the testator, goes to the other residuary legatees. It is well settled that it does not. The testator died intestate as to that share. *Garthwaite's Executor* v. *Lewis, 10 C. E. Gr. 351; Wms. Ex. 1315.*

The only arguable question, on this branch of the case, is whether the share which thus lapsed is to be treated as real estate or personalty. By the so-called eighth item of his will the testator directs his land to be sold after the death of his wife and the money divided among his residuary legatees. The direction to convert is imperative, and the executors have actually converted it. It is admitted that the balance now in their hands is the proceeds of the sale of land. Although this is so, I think there can be no doubt that the money is, for the purposes of distribution, to be treated as real estate and not as personalty. It was so decided in the leading case of *Ackroyd* v. *Smithson, Lead. Cas. Eq. *690,* where two out of a larger number of residuary legatees had died in testator's lifetime, and this case has been relied upon and followed in this court, in *Roy* v. *Monroe, 2 Dick. Ch. Rep. 356,* and in the court of appeals, in *Lerch* v. *Oberly, 3 C. E. Gr. 575.* The principle is thus stated in *Roy* v. *Monroe,* in a passage quoted by Vice-Chancellor Van Fleet from the note of the American editors to the above-cited case of *Ackroyd* v. *Smithson:*

Canfield v. Canfield.

"The conversion of property from one species to another by the will of the testator, takes place only for the purposes of the will, and so far as those purposes do not extend or in so far as any of them do not take effect in fact or in law, the property is considered as remaining in its former condition, as it was in the hands of the testator, and passes accordingly."

On the same general principle it is said by Chief-Justice Beasley, in *Lerch* v. *Oberly:* "The principle is established by a multitude of cases that where real estate is directed, either by the owner or by the order of the law, to be converted into money for a particular object, and a surplus remains after the accomplishment of such object, such surplus, as between the heir and personal representative of such owner, will be regarded by a court of equity as land, and will descend as such."

"Where," says Lord Eldon, in *Hill* v. *Cock, 1 Ves. & B. 175,* "a testator means, with regard to a particular purpose, to convert his real estate into personal, if that purpose cannot be served, the court will not infer an intention to convert the estate for any other purpose not expressed."

In view of these authoritative declarations, I should not have thought the question open to discussion had it not been for the case of *Hand* v. *Marcy, 1 Stew. Eq. 59.* There a testator, after directing a conversion of his lands, gave and bequeathed "the residue of his estate to S. M. L. E. and M. S., their heirs and assigns, to be equally divided between the said S. M. L. E. and M. S." M. S. died in the lifetime of testator. After holding that the legacy had lapsed, and that the surviving residuary legatees were not entitled by survivorship, Chancellor Runyon further held that the lapsed share, composed in part of the proceeds of the sale of land, went wholly to the next of kin, on the ground that the direction to convert was absolute. The only case cited by him in support of that proposition was *Miller* v. *Miller, 10 C. E. Gr. 354.* But the point there decided was only that a contract for the sale of real estate works an equitable conversion of the land into personalty from the time it is made, and that the purchase-money becomes a part of the vendor's personal estate, and, as such, distributable, upon his death, to his widow and next of kin. This decision is unquestionably sound, resting, as it does, upon the well-known rule declared in *Fletcher* v.

*Ashburner, 1 Lead. Cas. Eq. \*659,* but it had no application to the case then in hand. The distinction involved evidently escaped the notice of court or counsel, and the opinion indicates that the case was thought to turn chiefly upon another matter, viz., the effect of the words "heirs and assigns" on the question of lapse.

So strong is the rule that the undisposed of beneficial interest will result to the heir where the produce of the sale is to be applied for a purpose which, either wholly or partially, fails, that in the case of *Fitch* v. *Weber, 6 Hare 145,* it was held by Vice-Chancellor Sir James Wigram, on grounds that seem unanswerable, that the heir was entitled, notwithstanding testatrix's declaration that the trustees should stand possessed of the proceeds of the sale,

"as a fund of a personal and not of real estate for which purpose I declare that such proceeds or any part thereof shall not in any event lapse or result for the benefit of my heir-at-law."

The testatrix had provided that her trustees should apply the residue of her estate as she should, by codicil, direct, and she made no codicil. The controversy was between the next of kin and the heir-at-law. The vice-chancellor said: "Admitting the intention to exclude the heir, is not the intention equally clear to exclude the next of kin? Where, then, is there room for a necessary or any implication in favor of the next of kin? In these circumstances I feel myself called upon to follow the course of decisions, in holding that the testatrix has expressed an intention to exclude the heir only for the purposes of her will, and that if her words express more, and she has failed to say who shall take the surplus, the law must dispose of it. \* \* \* I cannot imply an intention in favor of those whom the will excludes. The heir takes, not by intention, but in the absence of intention."

Without doing violence to the principle upon which *Roy* v. *Monroe* and *Lerch* v. *Oberly* were decided, I cannot, in this case, give the proceeds of the sale of the land to the next of kin in preference to the heir-at-law.

I think it is perfectly plain that the widow of William Canfield does not answer the description of any of the persons mentioned in section 34 of the Wills act.