Thomas P. McGlynn, deceased, left the following self-drawn will, which we are asked to construe:
"May 10/23.
1. In the event of sickness or injury incapacitating me from conducting business I desire my wife, Alice Chaisson McGlynn, to have full charge of my affairs.
2. In the event of my death I desire my wife, Alice Chaisson McGlynn, after payment of my just debts, to have the following:
3. My insurance in the New York Life Insurance Company, all moneys I may have in bank, the stock in the corporation of McGlynn, Hays Company, and any other stock I may possess.
4. The foregoing should provide ample income for her support.
5. It is my desire that the income from other property, including the farm in my name at the Two Bridges, in the borough of Lincoln *Page 67 
Park, Morris county, New Jersey, also the stock of the Avoca Company, doing business at the latter place, also from our Verona property or from any other source, excepting that mentioned in preceding paragraphs, be invested and made a trust fund to be used, first, to provide an income of $3,000 per annum for my wife, Alice Chaisson McGlynn, if she is not in receipt of that amount, from the things left her directly, the balance to be invested and the income to be used to help any needy members of either of our families or for the education of the young of either of our families.
6. In case the properties referred to are sold, then my wife, Alice Chaisson McGlynn, shall receive fifty per centum of the money they shall bring, the remainder to be put into the trust fund referred to.
7. My desire is that Alice Chaisson McGlynn, my wife, shall be the executrix of this, my will, and handle the fund to be created with the assistance and co-operation of two members of my immediate family, whom she may select.
8. They will select Montclair Trust Company or the Essex Title Guarantee and Trust Company of Montclair, New Jersey, or some equally reliable company of that kind, and abide by their decision in case of a dispute.
9. My intention is, after providing sufficient money for the proper support of my wife, Alice Chaisson McGlynn, to be drawn by her quarterly, semi-annually or annually, to have the balance invested, after consultation with above-mentioned authorities, and the income used or allowed to accumulate to the mutual advantage of my wife and my family, particularly my sister, Ella McGlynn Gannon, and her children, and any children of any other of my family or any needy member of the families of either my wife or myself, Alice Chaisson McGlynn and the members of my family, whom she may select, to be the judges.
10. In the event of the death of Alice Chaisson McGlynn the trust fund is to be maintained for the benefit of the members of the McGlynn family and to be handled by my sisters and brothers who will have control in the order of their ages, three to be selected by the others to act for all, and this to continue in the new generations to come in order of their respective ages, the children of Ella McGlynn Gannon having precedence.
THOMAS P. McGLYNN. May 10/23. Witness — E.S. QUICK, L.R. GALLAGHER." (The paragraphs are numbered by the court for convenience.)
The testator's widow, two brothers and seven sisters survived him.
The value of the property which passed to the widow under the third paragraph is, approximately, $23,000. The rest of the property consists of $7,000 cash, the homestead, a vacant lot in Verona, and a tract of unimproved land in Two *Page 68 
Bridges, a net value of real estate of, approximately, $47,000. The real estate was unproductive. The only income the testator had was his salary of $10,000 a year. The tract in Two Bridges has been sold by the widow and heirs-at-law and the proceeds are in the hands of the executrix.
The intention of the testator is clear enough. Uppermost in his mind was to provide an annuity of $3,000 for his wife for life, to be be made up from the income of the property bequeathed to her absolutely by the third and sixth paragraphs of the will, and if this should prove insufficient, then the deficiency was to be made out of the income of the property given in trust. The remainder of the income of the trust fund was to be used during the widow's life for the benefit of the members of the testator's and her family, and after her death for the members of his family, forever.
The parties are agreed that so much of the trust, the income of which was to be used, in the discretion of the trustees, for any needy member of the testator or the widow's family, or for the education of the young of either family, and which was to be held in trust by the elders of each succeeding generation to come, without end, is void for vagueness and uncertainty, and is in violation of the rule against perpetuities, and that as to this the testator died intestate. McGill v. Trust Co., 94 N.J. Eq. 657.
So much of the gift in trust to secure the widow's annuity is preferential, independent and separable from the gift of the remainder in perpetuity, and is valid. Camden Safe Deposit andTrust Co. v. Guerin, 87 N.J. Eq. 72; affirmed, 89 N.J. Eq. 556;Hewitt v. Green, 77 N.J. Eq. 358; Murphy v. Morrisey Walker, 132 Atl. Rep. 206. As to this there is dispute, and it is argued that, as the sum to be contributed yearly out of the income from the estate given in trust might vary, depending upon the amount of the widow's yearly income from the gifts to her by the third and sixth paragraphs of the will, the sum required to set up the trust in this respect is indefinite and the gift void for uncertainty. There is no uncertainty as to the testator's meaning or his directions. His wife was the first and foremost object of his solicitude; the others were casual. Her income was *Page 69 
to be at least $3,000 a year. If the income from what he gave her outright failed, from any cause whatever, she was to have all or such part of the income of the trust estate to supply the deficiency. The gift of the income from the land is supplemental, and, although variable in amount, is asolute in effect. The entire "trusteed" estate was set apart primarily to insure the annuity, and the widow as executrix was to handle the fund.
The principal disagreement between the widow and the testator's brothers and sisters is over that part of the estate, consisting of real estate, of which the testator died intestate. The widow claims that all the real estate was to be sold, and, thus converted, the proceeds are payable to her under the statute of distributions. The brothers and sisters, on the other hand, denying that it was to be sold, claim that even though there was a conversion the proceeds retain the character of real property, except to serve the purpose of the conversion, and descended to them as heirs-at-law. Both are only partly right. The testator, it is evident, intended that his real estate should be sold and converted into money. In the direction, in paragraph 5, that the "income from other property" should be used as the capital of the trust fund, he, undoubtedly, meant the proceeds from the sale of the real estate, for he himself never had any income from the property, and none, except the income on the $7,000 cash and the $23,000 personalty, given the widow by the third paragraph, and possibly a small rental from the homestead was in sight. This would fall far short of $3,000 a year, and he must have realized that the trust for the widow's annuity could not be accomplished without a sale. It is only by the substitution of "proceeds" for "income" that the testator's dominant wish, to provide for his wife, can be fulfilled, and such substitution is permissible in judicial construction when necessary to carry out the intention.Cody v. Bunn, 46 N.J. Eq. 131. An illustration is to be found in Miers v. Persons, 92 N.J. Eq. 17. The testator's conception of the necessity of a sale is also indicated by the gift to the widow of half the proceeds of the sale of the lands, the income of which was to help round out the annuity. "If the directions of the *Page 70 
will, as to the proceeds, require a sale, it is equivalent to a positive direction to sell and the land is deemed personal property from the death of the testator." Cook v. Cook,20 N.J. Eq. 375; Brown v. Fidelity Trust Co., 82 N.J. Eq. 323.
The contention of the heirs that the income on the $7,000 cash, and from the $23,000 given to the widow in the third paragraph ($1,800 a year), plus the rent from the homestead, and possibly some from the vacant land, will or may be sufficient to pay the $3,000 annuity, and that a sale of the real estate is therefore not imperative, and, consequently, there is no implied duty to sell, is inadmissible. It overlooks the fact that the "income
from other property" was not to be used to discharge the annuity, but was to be invested and the income on the investment used to carry out the trust. It would take years to accumulate sufficient capital from neat income to produce an income of approximately $1,200 a year to satisfy the annuity which began accruing at once.
The language, "in case the property referred to is sold," in the sixth paragraph, was not intended to modify the immediately preceding implied direction to sell, nor to leave it to the discretion of the executrix whether the land should be sold. The contingency "in case" relates not to the duty of selling, but to the time when the executrix should perform that duty and "then" the widow was to come into enjoyment of one-half the proceeds of the sale, and is to be read as: When "the properties referred to are sold, then, my wife, Alice Chaisson McGlynn, shall receive fifty per centum of the money they shall bring, the remainder to be put into the trust fund referred to." The one-half interest in the proceeds of the land vested in the widow at the death of the testator; the enjoyment only was postponed until the sale.
A power of sale is impliedly in the executrix, who is also the trustee, from the implied power to sell the lands. Ker v.Banta, 71 N.J. Eq. 49.
While it was the testator's intention that all his real estate should be sold and converted, nevertheless, as to so much of the trust in perpetuity for the members of the testator's family, held to be invalid, the conversion failed pro tanto, *Page 71 
and only so much of the proceeds of the sale of the real estate, applicable to the trust, as may be required to maintain the annuity, and for that limited purpose only, is to be treated as personal property, and upon the termination of the annuity it will resume its original character of real property and pass to the heirs-at-law. The conversion was solely for the purpose of carrying out the testamentary scheme, and with respect to matters in which the scheme failed, the conversion failed. The principle is well established in this state in Roy v. Monroe, 47 N.J. Eq. 356,
followed in Canfield v. Canfield, 62 N.J. Eq. 578,
the essence of which is set forth in this head note: "Where a testator orders his land to be sold, the conversion will, unless a contrary intention distinctly appears, be deemed to have been directed merely for the purpose of the will, and, consequently, if any of the purposes fail so that the money does not pass under the will, it will in equity be considered land and given to the heirs."
A decree will be advised that all the real estate be sold; that the executrix has power of sale; that the widow is entitled to one-half the proceeds of the sale of lands; that the remaining half of the proceeds be held by the executrix to satisfy the annuity; that upon her death the principal and the accumulations, if any, be paid to the brothers and sisters, heirs-at-law. The widow is presently entitled to all the personal estate of which the testator died intestate.
The further question raised by the bill, whether the widow's legacy in paragraph 3 is chargeable with the debts, was not argued, and, therefore, not decided. Counsel may be heard if they so desire. *Page 72