MIDDLESEX COUNTY ORPHANS COURT.

IN THE MATTER OF JOHN BARBOUR, DECEASED.

Decided February 15, 1938.

For the next of kin, *Paul Ewing.*

For the heirs, *Henry A. Berg.*

LYON, O. C. J.   John Barbour died in the county of Middlesex leaving a last will which was admitted to probate on April 11th, 1924; the third and fifth clauses of which are as follows:

"3. All the rest, residue and remainder of my property, both real and personal, I give, devise and bequeath unto my executor hereinafter named, National Bank of New Jersey, in trust, to invest the same and out of the income thereof to pay unto my wife, Margaret Barbour, the sum of sixty dollars per month from the date of my decease, during the term of

her natural life, and such further sum as in the judgment of my said trustee shall be absolutely necessary for her maintenance and support. Upon the death of my said wife, Margaret Barbour, my trustee shall pay her funeral expenses and shall expend the balance of the principal and the accrued income of my estate in the beautification of the cemetery plot owned by my mother in Elmwood Cemetery, near the City of New Brunswick, New Jersey, and in the erection therein of a monument or mausoleum in the memory of my mother, Sarah Barbour, and in providing with the said Cemetery Association for the perpetual care of said plot.

"5. I hereby constitute and appoint the said National Bank of New Jersey, a corporation organized under the National Banking Laws of the United States, and whose principal office is located in the City of New Brunswick, Middlesex County, New Jersey, executor and trustee of this my last will and testament, and hereby authorize it as such executor and trustee to sell and convey the whole or any part of my real estate at public or private sale, at such times and upon such terms as to it shall seem proper."

Margaret Barbour, the widow of the said John Barbour, died on March 13th, 1930, leaving a will which was admitted to probate on March 27th, 1930, which, after providing for her debts and funeral expenses and a $200 bequest, devised all the rest, residue and remainder of her personal estate to Anna Woener.

Upon the death of said John Barbour he left a personal estate amounting to $1,816.07. His debts at that time amounted to $6,922.37. The administration expenses of his estate amounted to $1,195.26, so that there was a deficiency of his debts and administration expenses over his personal property of $6,301.56.

In addition to his personal estate he left a property at No. 20 Albany street, New Brunswick, and a tract of land of little value in East Brunswick township.

On October 1st, 1924, the executor, under the power of sale in the will, sold the New Brunswick property for $22,605.30, and in December, 1934, sold the East Brunswick township

property for $75. A mortgage of $4,000 on the New Brunswick property with accrued interest was paid out of the receipts of the sale.

On December 11th, 1925, the final account of the executor was allowed by this court which showed a balance of $17,193.06.

On October 17th, 1936, the executor filed a bill in the Court of Chancery for the purpose of having the will, and especially the third clause thereof, construed; and as a result thereof the Court of Chancery decreed that the executor should expend the sum of $3,000 in the erection of a monument in memory of testator's mother and in the beautification of her plot and the establishment of a fund with the cemetery association for the care thereof.

The court further held that the provision in said third clause to any further extent than the $3,000 as above decreed "has lapsed by reason of impossibility of performance and passes by intestacy to the decedent's next of kin." The balance so lapsed now amounts to the sum of $11,186.13.

The executor now applies for an order of distribution of this fund and has brought into court both the next of kin and the heirs-at-law of the said John Barbour. The next of kin claim that the fund is personal property and should be distributed among them; the heirs-at-law claim that the fund is real estate and should be distributed among them.

There can be no question but that the testator intended that his real estate should be sold. The provisions of his will could not be carried out unless it were sold. His debts and administration expenses exceeded his personal estate by $6,301.56. He gave all his property to his executor directing it to invest it and pay his wife $60 per month for her life and such further sum as might be necessary for her support; he directed the payment of her funeral expenses and finally that the balance should be expended upon the cemetery plot. He gave the executor power of sale at its discretion.

Since the directions of the will required a sale it was equivalent to a direction to sell and therefore the land was deemed personal property from the death of the testator.

But even if that were not the case the land certainly became personal property at the time it was actually sold on October 1st, 1924. *Wurt's Ex'rs* v. *Page,* 19 *N. J. Eq.* 365; *Cook's Executor* v. *Cook's Admr.,* 20 *Id.* 375; *Crane* v. *Bolles,* 49 *Id.* 373 (at *pp.* 379, 380); 24 *Atl. Rep.* 237; *Aitken* v. *Sharp,* 93 *N. J. Eq.* 336 (at *p.* 346); 115 *Atl. Rep.* 912; *Sampson* v. *Sampson,* 96 *N. J. Eq.* 198; 124 *Atl. Rep.* 708.

If that were all there is in the case there is no doubt but that the whole of the estate of the testator would be considered as personal property and be distributed in accordance with the laws governing the distribution of such property.

However, it appears that by the decree of the Court of Chancery a part of the trust mentioned in the third clause of the will failed and that thereupon John Barbour died intestate of so much of the property as is represented by the trust which failed.

The rule in such a case is that if a testator dies intestate as to a part of his property then that part would be in the same position as any other property of which a person dies intestate and would retain the same character which it possessed in the lifetime of the testator, and of course at his death.

The intention of the testator was to accomplish certain things, therefore the conversion of his real estate into personalty to effect his intention could be considered as done only to the extent that his intention could be carried out, and when his intention could not be carried out (in this case by the order of the Court of Chancery) then of course the conversion into personalty must fail. The situation is the same as where land, for a certain purpose, is required to be converted into money, and in the sale more is sold than is required for that purpose, the excess of the proceeds will be considered as land. See *Cook's Executor* v. *Cook's Administrator, supra.*

The rule applicable here is stated in the case of *White* v. *White,* 109 *N. J. Eq.* 553. There it is stated as follows: "Equitable conversion is a fiction to protect beneficiaries and to sustain and carry out the intention of the testator or settlor; it rests in the personal intention of the owner of the

property and operates no further than to accomplish its purpose." It is also well stated in the case *McGlynn* v. *McGlynn*, 101 *N. J. Eq.* 66 (at *p.* 71); 137 *Atl. Rep.* 434, as follows: "The conversion was solely for the purpose of carrying out the testamentary scheme, and with respect to matters in which the scheme failed, the conversion failed." In the latter case Vice-Chancellor Backes quotes the case of *Canfield* v. *Canfield*, 62 *N. J. Eq.* 578; 50 *Atl. Rep.* 471, as follows: "Where a testator orders his land to be sold, the conversion will, unless contrary intention distinctly appears, be deemed to have been directed merely for the purpose of the will, and, consequently, if any of the purposes fail so that the money does not pass under the will, it will in equity be considered land and given to the heirs."

In the case of *Roy* v. *Monroe*, 47 *N. J. Eq.* 356 (at *p.* 360); 20 *Atl. Rep.* 481, there was a gift of $10,000 to the testator son for his life, and to go to his son's children after his son's death. The court said: "Though the land, which this sum represents, was changed, by a direction contained in the testator's will, from land to money, yet it has so happened that his will does not, in the present situation of affairs, dispose of the money." The son died without leaving children so that it appeared that the purpose of the conversion had failed. The court there held that it retained the character as real estate.

In the present case John Barbour intended that all the residue of the property should be used for the purpose of the cemetery and it was to carry out that intention that his land was turned into personalty. His intention failed through the order of the Court of Chancery so that he died intestate as to the part which failed. If he died intestate of it then it must be considered as entirely outside of the scope of his will and his will cannot affect it in any way. So far as this part of his property is concerned it is the same as if he left no will at all. If he had left no will his real estate would have descended to his heirs. That is the result in this case.