ANNA ASHELFORD, *Appellant,* v. ELIZABETH CHAPMAN *et al., Appellees.*

No. 16,182.

SYLLABUS BY THE COURT.

1. WILLS—*Rights of a Widow.* A widow provided for by her husband's will has the choice of two rights, one under the statute of descents and distributions and one under the will; but she can not have both, except in cases where such is the purpose of the will. She may take either, but the election of one is a relinquishment of the other.

2. —————— *Effect of Widow's Election to Take under the Statute.* The widow's election is between will and no will. If she take under the statute there is no will as to her, and none of her rights can be abridged by any of its provisions. Her share is carved out of the estate according to law, precisely as if no will had been made. Then the will operates upon the residue.

3. —————— *Same.* If the widow take under the statute the principle that there is no will as to her forbids that she should enlarge any of her rights under the statute by an appeal to the will. She is a stranger to it and has no standing to compel others who take under the will to comply with provisions which might increase her distributive share of the estate.

4. —————— *Same.* When a widow elects to take in opposition to her husband's will she receives the share of his estate that she would have taken had he died intestate, which is one-half in value after the payment of debts.

5. —————— *Widow Bound by Her Election to Disregard a Will.* A husband made provision for his wife and children in his will. The children were given certain real estate the purchase price of which had not been fully paid. The will required the children to contribute equally from their shares of the estate sufficient sums to satisfy this indebtedness. The widow elected to take under the statute of descents and distributions, and in an action to partition the real estate demanded that the purchase-money liens be charged entirely upon the children's portions. *Held,* she is bound by her election to disregard the will, can not invoke to her advantage the provision relating to the payment of the liens, and the will can not be considered in determining the share of the estate which the statute awards her.

Appeal from Osage district court; ROBERT C. HEIZER, judge. Opinion filed December 11, 1909. Affirmed.

*George Brown, A. B. Crum, Lee Monroe,* and *George A. Kline,* for the appellant.

*D. J. Carnes,* and *J. H. Stavely,* for the appellees.

The opinion of the court was delivered by

BURCH, J.: Abram Ashelford, a resident of Illinois, died at his domicile, leaving a will. He was survived by a widow and ten children, all of whom were given portions of his estate by the will. At the time of his death he owned real estate and personal property in Illinois and real estate in Osage county, Kansas. His will was duly probated in Illinois and an executor of his estate was appointed there. A copy of the will was admitted to record in Osage county. The real estate in Kansas was devised to the children. One tract was held under a bond for a deed and another under a contract of purchase, and upon the two the testator owed, at the time of his death, $18,100, as a part of the purchase price. Subsequent to the testator's demise the widow advanced $1000 and the ten children advanced $100 each toward the discharge of this indebtedness. The ninth clause of the will provides as follows:

"It is my further will that in the event at my decease I am indebted to any person or persons for the purchase price of all or any part of the real estate owned by me, or for any lien created upon any of said real estate, for the payment of the purchase price of said real estate or any part thereof, that all my children shall equally contribute out of their share or shares of my estate given and bequeathed, granted and devised to them under this, my will, an amount sufficient to pay off all of said indebtedness."

The widow renounced the provisions for her benefit contained in the will and elected to take under the law. The personal estate is sufficient to pay all the testator's debts.

With affairs in this situation the widow commenced an action to partition the Osage county land, setting forth in the petition substantially the foregoing facts.

A part of the relief demanded was that the purchase-money liens be charged upon the share belonging to the children, according to the ninth clause of the will, that the widow's one-half be set apart to her free of such liens, and that she be given a lien upon the children's portion for the $1000 which she had advanced. The executor was made a party, but he was served by publication only and made no appearance. The vendors merely exhibited their liens and asked that they be protected. The children admitted the facts stated in the petition, but submitted to the court whether their interests ought to be charged with the purchase price of the land as the plaintiff contended. The court awarded partition, but refused to relieve the widow's share of the land or to give her a lien for her advancement, and she appeals.

On behalf of the widow it is said that a testator may annex any condition he may choose to a devise of real estate and that the devisee must take subject to the condition or not at all. He can not accept the benefits and escape the burdens. Such indeed is the law, as the children concede, but they insist that the widow has no standing to demand an application of the principles stated, because in doing so she necessarily claims the benefit of a specific provision in a will which she repudiated altogether when she elected to take what the law gives.

The statute of wills provides in substance that no man shall will away from his wife more than one-half his property, but she may consent in writing to a will disposing of a larger share. (Gen. Stat. 1901, § 7972.) If provision be made for the widow in her husband's will, she shall be cited to appear and make her election whether she will accept such provision or take what she is entitled to under the law of descents and distributions, but she shall not be entitled to both. (Gen. Stat. 1901, § 7979.) If she fail to make such election she shall retain the share of her husband's real and personal

estate to which she would have been entitled had he died intestate. If she elect to take under the will she shall not be entitled to the provisions of the law for her benefit, but shall take under the will alone. (Gen. Stat. 1901, § 7980.) The statute of descents and distributions provides in substance that after the homestead and personal-property exemptions are allowed the remainder of an intestate's real and personal effects not necessary for the payment of debts shall be distributed as follows (Gen. Stat. 1901, § 2503) : One-half in value of the husband's real estate not necessary for the payment of debts shall be set apart to the widow. (Gen. Stat. 1901, § 2510.) The widow's portion can not be affected by any will of her husband if she object thereto and relinquish all right conferred upon her by the will. (Gen. Stat. 1901, § 2519.) Personal property not necessary for the payment of debts shall be distributed as though it were real estate. (Gen. Stat. 1901, § 2532.)

From these statutes it is plain that a widow provided for by her husband's will, to which she has not previously consented, has the choice of two rights—one under the statute of descents and distributions and one under the will; but she can not have both, except of course in cases where such is the purpose of the will. She may take either, but the election of one is a relinquishment of the other. Her choice is between will and no will. If she take under the law, there is no will so far as her rights are concerned. Her share is carved out of the estate according to the law of descents and distributions, precisely as if no will had been made. Then the will operates upon the residue. The will of what remains after she has been satisfied may create rights and may impose obligations, but she is a stranger to them. Her election in effect partitions the estate into two separate and independent domains, one governed exclusively by the statute of descents and distributions and one governed exclusively by the will. She occupies one, the beneficiaries of the will occupy the other, and

there are no reciprocal relations between them. The beneficiaries of the will owe her no duty under the will, because she renounced all rights under the will, became an alien to it, and betook herself to her own peculiar demesne. She can not invade their territory and demand of them anything secured or enjoined by the will, because she satisfied every claim she possessed when she elected to take according to law.

What has just been said appears to follow so clearly and indisputably from the language of the statutes referred to and from the settled principles of law relating to election that the citation of authority seems superfluous. However, the following quotations are pertinent:

"The widow can take only what the law gives her, or what her husband gives her, unless it plainly appears by the will that he intended the provision in his will for her to be in addition to what the law gives her. The statute provides that if she fails to take under the will she shall retain her dower and distributive share, and if she elects to take under the will she shall be barred of dower and her distributive share, and take under the will alone. The provision for her in this will is not in addition to her dower and distributive share, and she failed to elect to take under the will. There is no right in her to require the executor to convert the real estate into personal property, and no 'ought' upon him as to her. Her right to dower and a distributive share is paramount to the right of her husband to dispose of his estate by will, and he can dispose of it only subject to her right, and in the present case he has expressly made it subject to her right. If she does not elect to take under the will, her right remains as it would be had he died intestate leaving children, as to her rights it is as if he had died intestate. There is no will to work a conversion until she has received her dower and distributive share. She retains what the law gives her, and the will disposes of what remains, and she, having taken under the law, can not claim any benefit under the will, and to claim the proceeds of the real estate as personalty is claiming under the will." (*Geiger v. Bitzer*, [Ohio, 1909] 88 N. E. 134, 135.)

"Election, in the sense that applies to the present contention, means a choice between two courses of action,

acquiescence by the widow in her husband's disposition of his property, or disregard of it and assertion of the rights the law gives her. There is no third or mixed course. Her legal rights which are paramount to the husband's control, attach *eo instanti* that he dies, and there is no interval during which the will can slip in and work a conversion, and then stand aside to let in her intestate rights upon the converted estate. Conversion takes place by virtue of the will, but as to the widow so electing there is no will. She must make her choice, and it is will or no will. She has time to consider which she shall take, but the quality of the estate as to her rights is fixed at the moment of death, and she must take one or the other as they were then. The law does not permit her to say there is a will for conversion, and no will as to her share." (*Cunningham's Estate,* 137 Pa. St. 621, 627.)

"The widow was entitled to such share of her husband's personal estate as she would have been entitled to had he died intestate; and in ascertaining that share his estate is to be regarded and treated as if he had died intestate. Her interest in the estate can be neither increased nor diminished by any of the provisions of the will. It must be ascertained and determined as if there were no will in existence." (*Barnett's Administrator v. Barnett's Administrator,* 58 Ky. 254, 259.)

"The moment the widow renounced her interest under the will she stood as much a stranger thereto as if she had not been mentioned in that instrument." (*Witherspoon v. Watts,* 18 S. C. 396, 423.)

"The effect of her dissent is simply to annul the provisions of the will in her favor—to blot them out, and leave them as if from death or any other cause she had become incapable of taking. The statute does not contemplate that it shall in any other respect disappoint and nullify the arrangements of the will, destroy the rights it confers, or that it shall create new and distinct rights in those who are strangers to the will. The whole purpose of the statute is accomplished when she obtains that which the law would have given her if her husband had died intestate." (*Dean v. Hart, Adm'r,* 62 Ala. 308, 310.)

"Besides, the widow, having dissented from the will, could not take a maintenance or anything else under the

will. As held by us in *McReynolds v. Jones,* 30 Ala.,
she can not take both under and against the will.
. . . The widow not being entitled to 'any sort of
provision' under the will, the administrator should not
be allowed in the general account of his administration
any credit for advancements made to, for or on account
of the widow, or for the contribution of anything to
her maintenance, after the testator's death." (*Pearson
and Wife v. Darrington,* 32 Ala. 227, 240.)

"Election in the sense here used is the obligation im-
posed upon a party to choose between two inconsistent
or alternative rights or claims in cases where there is
clear intention of the person from whom he derives one
that he should not enjoy both. Every case of election
therefore presupposes plurality of gifts or rights, with
an intention, express or implied, of the party who has a
right to control one or both, that one should be a substi-
tute for the other. The party who is to take has a
choice; but he can not enjoy the benefits of both."
(2 Story's Eq. Jur., 13th ed., § 1075.)

When a widow takes in opposition to her husband's
will, what does she receive? According to the statutes
referred to she receives a fixed and definite portion of
the estate—the share she would have taken had her
husband died intestate; and that share is one-half in
value after the payment of debts.

"His widow refused to accept under the provisions of
the will, but elected to take under the provisions of the
law of descents and distributions; and hence she takes
absolutely (instead of for life) one-half of all the estate
of said Samuel Allen, deceased. The other half of the
estate, we think, should be distributed in accordance
with the will, or as near in accordance therewith as may
be possible under the circumstances of the case. Of
course, the whole estate is first chargeable with the
payment of the debts of the estate. Then the widow
takes one-half thereof." (*Allen v. Hannum,* 15 Kan.
625, 626.)

In the case of *Gordon v. James,* 86 Miss. 719, an
ingenious argument was made that inasmuch as the
widow renounced the will she should take her share of
the estate under the law, burdened with all the debts,

since her husband was only partially intestate and in cases of partial intestacy property undisposed of by the will should first be appropriated to the payment of debts. The court said:

"The argument is perfectly sound, but the existence of the premises is erroneously assumed. Section 4496 does not say, upon the renunciation of the will by the widow the decedent becomes 'partially intestate' or 'intestate as to a portion of his estate,' but expressly recites that upon the filing of such renunciation the widow 'shall be entitled to such part of his estate, real and personal, as she would have been entitled to if he had died intestate.' If the decedent had died intestate in the instant case—and by operation of the statute quoted so he did, so far as regards the rights of his widow—the widow would have been entitled to one-half of his real and personal estate, under certain well-understood conditions and limitations. And they are not difficult of understanding. Upon the death of an intestate the estate, both real and personal, stands charged with the debts of the decedent—the personal estate primarily; secondarily, when the personalty is exhausted, the real estate. After the payment of debts, an heir's lawful portion of the residue vests in the widow." (Page 740.)

In this case the widow pleaded the will and demanded affirmative relief by virtue of the ninth clause. She can not be permitted to assume antagonistic attitudes. She is irrevocably bound by her former expressed determination not to recognize the will. She has no more license to invoke the provision relating to the payment of certain debts than she has to invoke any other provision which may now seem to be advantageous to her. Her election was an election to measure her rights by the law and not by the will, and the will can not be used as a factor for the determination of the share of the estate which the statute awards. It may be true that the devisees of the land in controversy would not be allowed to dispute with any one interested in the will the binding force of the ninth clause upon them, but the widow has no interest in the will. The devisees are

not obliged to, answer to her respecting their conduct under it, and they have the right to insist that she do not intrude where she is not concerned. The quantity of the estate for distribution may be considerably diminished by its appropriation to the discharge of these purchase-money obligations, but that was a circumstance which she should have taken into account when she made her election.

The widow argues that a decree should have been entered for the payment of the purchase-money liens out of the personal estate of the decedent. It does not appear that there is any personal estate in Kansas. Manifestly the district court of Osage county could not exercise jurisdiction to administer an estate situated in Illinois and in due course of settlement in the proper court of that state or to direct the course the executor should pursue with respect to assets held in the foreign state. It could extend the judgment no further than to bind the property within this state.

The judgment is affirmed.