[L. A. Nos. 4488, 4489. In Bank.—August 11, 1917.]

In the Matter of the Estate of GEORGE E. LOYD, Deceased. CHARLES HICKS, Respondent, v. ELIZABETH J. LOYD et al., Appellants.

ESTATES OF DECEASED PERSONS—APPEALABLE ORDER—SALE OF REAL PROPERTY OUTSIDE STATE.—An order of the superior court directing executors of a will, probated in California, to sell all the lands of the testator situated in Iowa, and to transmit the proceeds to California for distribution or to show cause, in case of neglect to do so, why they should not be removed as executors, is an order "in favor of directing the partition, sale or conveyance of real property," within the meaning of subdivision 3 of section 963 of the Code of Civil Procedure, and an objection that such an order is not appealable is frivolous.

ID.—WILLS—DESCENT AND DISTRIBUTION—PRETERMITTED CHILD.—Wherever a testator has by will disposed of all his property, a pretermitted child does not and cannot take under the will, but takes in opposition and hostility to that will.

ID.—CONSTRUCTION OF CODE.—This rule is unchanged by the amendments of 1905 to sections 1306 and 1307 of the Civil Code.

ID.—EQUITABLE CONVERSION.—The doctrine of equitable conversion is fully recognized in this state by the Civil Code, section 1387, which is merely declaratory of the equitable doctrine.

ID.—TITLE TO LAND—LAWS GOVERNING.—It is a well-established doctrine that the laws of the state where land is situated govern the transmission of title within such state, and this principle is subject to no modification save when and as the laws of the state (*locus rei sitae*) in terms permit such modification.

ID.—CONSTRUCTIVE CONVERSION.—Where a testator residing in California and whose will was probated there made certain provision for his wife, and directed that all his property in Iowa should be sold by his executors "for such price as they deem proper . . . subject to approval of the court having jurisdiction of such matters in the county wherein such property is situated," the proceeds to be distributed equally among his twelve children, the provision of the will worked, not an actual conversion, but a constructive conversion merely, and the parties in interest under the will had, under the laws of Iowa, a right to effectuate a reconversion at any time before actual conversion.

ID.—RECONVERSION—ELECTION BY BENEFICIARIES UNDER WILL.—A valid election by all the devisees in a will to take lands *as lands*, as heirs, and not to take under the terms of a will, supersedes and destroys the power given to the executors to convert the lands into money for the purpose of distribution under the will.

ID.—PARTIES—NONJOINDER—PRETERMITTED HEIR.—The nonjoinder of a pretermitted heir does not defeat the reconversion, because he does not take under the will, but in hostility to it.

ID.—APPEAL FROM ORDER—STAY OF PROCEEDINGS.—An appeal by executors from an order directing them to sell property suspends the operation of the order, and a subsequent order removing the executors for disobedience of the former order is illegal.

APPEAL from an order of the Superior Court of Los Angeles County directing executors to sell lands, and from a decree removing the executors for disobedience of the order. W. H. Thomas, Judge.

The facts are stated in the opinion of the court.

M. F. Harrington, R. C. Noleman, Hammack & Hammack, and M. W. Frick, for Appellants.

Valentine & Newby, and T. W. Duckworth, for Respondent.

HENSHAW, J.—By the first of these appeals this court is asked to review an order made by the court in probate, in terms directing the executors of the estate of George E. Loyd, deceased, who died testate, who at the time of his death was a resident of the state of California and whose will was pro-

bated in this state, ''to sell all of the lands owned by said deceased at the time of his death in the state of Iowa, and to transmit the proceeds arising from the sale thereof to the county of Los. Angeles, state of California, for distribution in accordance with the laws of the state and in pursuance of the last will and testament of said George E. Loyd, deceased; be it further ordered, that if the said executors fail, neglect, or refuse to sell the said land situated in the state of Iowa owned by the said George E. Loyd at the time of his death, that they show cause in this court on or before the first day' of September, 1915, at 10 o'clock A. M. of that day, why they should not be removed as executors of the last will and testament of George E. Loyd, deceased, and why an administrator with the will annexed should not be appointed in their stead to execute the power of sale,'' etc.

The appeal in L. A. No. 4489 is from the decree of the court removing the executors for disobedience of the order above quoted. The questions presented upon both appeals are interrelated. Wherefore one consideration will do for both.

Respondent's objection addressed to appeal in L. A. No. 4488, that the order itself is not appealable because ''it is not an order to sell real estate, but is an order requiring the executors to proceed to execute the will or to show cause why they should not be removed,'' is frivolous. Section 963, subdivision 3, of the Code of Civil Procedure, grants a right of appeal from an order ''against or in favor of directing the partition, sale or conveyance of real property,'' precisely such order as was here made.

George E. Loyd, deceased, married in the state of Iowa and accumulated property therein. Twelve children were born to him and they and his wife, who also survived him, are all recognized as devisees under his will. Eight or nine years before his death Loyd and his wife moved to California and here resided until his death. He acquired property in this state; it was his domicile, and his will was here probated. Besides his property in California he left properties of large value—some of it real estate—in the state of Iowa. Charles Hicks, not mentioned in the will, entered proceedings in the estate to have his status declared as that of a bastard son of the deceased, who, in writing, signed in the presence of a competent witness, had acknowledged himself

to be the father of the child. He prevailed in his effort (*Estate of Loyd,* 170 Cal. 85, [148 Pac. 522]) and was thus instituted as a pretermitted heir of the deceased, since his name was not mentioned, nor was he in any way referred to in the will.

All the property in California testator gave, devised, and bequeathed to his wife, with the provision that whatever remained at the time of her death should be divided amongst his children. All the property in the state of Iowa the will directed should be "sold by my executors for such price as they deem proper, at public or private sale, without order or orders of sale from any court, but subject to approval of the court having jurisdiction of such matters in the county wherein such property is situated." The proceeds arising from this disposition of the Iowa properties were to be distributed equally amongst his twelve children. The realty in Iowa was and is of large value. The widow made her election to take not under the will but under the laws of California and the laws of Iowa. This determination gave her an estate in the real property in Iowa. All the devisees of the Iowa real property under the will, including the widow, elected to take the Iowa lands in kind. This election, if good, destroyed the power of the executors under the will to convert these lands into money. When the executors were cited to show cause and ordered to make the sale of the Iowa real estate, they answered, with evidence, establishing this election of the devisees and the widow to take in kind. But it being conceded, or at least not successfully questioned, that the laws of Iowa do not recognize any right of inheritance in a pretermitted heir, as do the California laws, and as under no ancillary proceedings could Charles Hicks by inheritance succeed to any interest in the Iowa real estate as such, its disposition being unquestionably controlled by the laws of that state, it is at once apparent that it became greatly to the interest of Charles Hicks to cause the Iowa real estate to be sold and the proceeds of the sale brought to California for distribution, as thus only, if at all, he could obtain a share of it. To this end, therefore, these proceedings were directed in the probate court and resulted, so far as that court was concerned, in the success of his efforts. Thus having sufficiently outlined the matter in controversy, we may proceed to a consideration of the merits.

1. The status of Charles Hicks as a pretermitted heir is completely determined by section 1387 of the Civil Code, and his rights as such pretermitted heir are wholly defined by sections 1306 and 1307 of the same code. Section 1306 deals with the rights of a child born after the making of a will; section 1307 with the rights of an omitted child (or children of a deceased child). But in their essence the rights are identical, so that it is for convenience merely that they have been defined in separate sections. Section 1307 deals specifically with the rights of Charles Hicks, but in both sections the language of the code defining those rights is practically identical, so that the constructions put by this court upon section 1306 have direct applicability upon the question of the meaning of section 1307. By section 1306 the after-born child "succeeds to the same portion of the testator's real and personal property that he would have succeeded to if the testator had died intestate." By section 1307 the omitted child "has the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section," the language of which we have just quoted. It is manifest that upon reason alone such a child does not and cannot take under the will, since he is permitted to take because he has been omitted from the will. The intent of the testator as expressed in such a will is clear. It is to give his property to others to the exclusion of the omitted heir, and this intent is not affected by the fact that the omission to name the pretermitted heir was or was not intentional. As the omitted heir, in contemplation of the law entitling him to inherit, was never in the testator's mind, by no stretch of imagination can it be said that the testator designed any of the provisions of his will to apply to that heir. In accordance with this reasoning our cases all hold, as necessarily they must, that such an heir does not and cannot take under the will, but takes (wherever by will the testator has disposed of all of his property) in opposition and in hostility to that will. (*Pearson* v. *Pearson,* 46 Cal. 609; *Estate of Wardell,* 57 Cal. 484; *In re Grider,* 81 Cal. 571, [22 Pac. 908]; *Smith* v. *Olmstead,* 88 Cal. 582, [22 Am. St. Rep. 336, 12 L. R. A. 46, 26 Pac. 521]; *Painter* v. *Painter,* 113 Cal. 371, [45 Pac. 689]; *Estate of Smith,* 145 Cal. 118, [78 Pac. 369].) In *Smith* v. *Olmstead, supra,* it is said: "We are unable to consider these sections otherwise than as

declaring that the pretermitted child succeeds immediately by operation of law to the same portion of the testator's real property as if no will had been made; that as to such portion the testator is to be regarded as dying intestate and its succession is directed by law and not by the will.'' In the later case of *Estate of Smith, supra,* the same unescapable doctrine is declared, and it is said: ''And so far as such child is concerned the will is to be considered as not existing.'' Respondent herein advances the utterly fallacious argument that this doctrine and rule of construction have been changed by amendments added to sections 1306 and 1307 in 1905 (Stats. 1905, p. 606), which amendments, identical in both sections, are found in the addition to each of its final sentence. But by this amendment the rule that so far as concerns a pretermitted child ''the will is to be considered as not existing'' was not and could not have been changed. The amendment merely changed the embarrassing conclusion to which this court had been forced, that the rights of such pretermitted child to real property were not divested by the sale of such property, even though the sale in all other respects was legal and valid.

2. The doctrine of equitable conversion is fully recognized in this state. Section 1338 of the Civil Code is but declaratory of that equitable doctrine, in saying, ''When a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of the testator's death.'' And such cases as *In re Walkerly,* 108 Cal. 627, [49 Am. St. Rep. 97, 41 Pac. 772], *Fatjo* v. *Swasey,* 111 Cal. 628, [44 Pac. 225], and *Bank of Ukiah* v. *Rice,* 143 Cal. 265, [101 Am. St. Rep. 118, 76 Pac. 1020], recognize the doctrine to the fullest extent. Nevertheless, bearing in mind that the land which is to be or is not to be affected by the application of this doctrine is land in the state of Iowa; that the will provides for the approval of any sale of the Iowa lands by the appropriate courts of that state, and that even without such provision the descent, devise, distribution,—in short, the whole question of the devolution of title of Iowa lands is wholly subject to the jurisdiction of the Iowa courts under the Iowa law, consideration must be paid to that law in reviewing the facts touching conversion, nonconversion, or reconversion which are here presented and argued. Preliminarily, however, it may be said that so well

established is the doctrine that the laws of the state govern the transmission of title to land within the state, that in passing we need do no more than direct attention to such cases as *McCormack* v. *Sullivant*, 10 Wheat. (U. S.) 202, [6 L. Ed. 300] ; *Clarke* v. *Clarke*, 178 U. S. 186, [44 L. Ed. 1028, 20 Sup. Ct. Rep. 873] ; *Clopton* v. *Booker*, 27 Ark. 482; *Van Wickle* v. *Van Wickle*, 59 N. J. Eq. 317, [44 Atl. 877] ; *Guarantee Trust etc. Co.* v. *Maxwell* (N. J. Eq.), 30 Atl. 339; *Lynch* v. *Miller*, 54 Iowa, 516, [6 N. W. 740]. It may be added that no principle of law is better founded nor more firmly established than the foregoing, and that it is subject to no modification saving when and as the laws of the state, *locus rei sitae,* in terms permit such modification. It is idle for respondent to argue that such a modification is found in a statute of Iowa which provides, touching only the execution of wills, that the laws of Iowa will recognize a will as having been duly executed provided it be in writing, subscribed by the testator, and be executed in the mode prescribed by the law of the place of execution. (Iowa Code, sec. 3309.) For it is too plain to call for discussion that this section of the Iowa code was designed merely to give authenticity and validity to wills in so far as their *execution* is concerned and has not the slightest reference to the meaning and .construction of such wills.

In setting forth the facts touching the asserted conversion and reconversion of this Iowa real estate, it will be assumed that an equitable conversion was worked by virtue of the language of the testator's will, for this assumption, as we shall see, is borne out by the law of Iowa. Nevertheless, it was not an actual conversion but a constructive conversion merely, and all the devisees of this land—the twelve children and the widow—all the parties, in short, who were recognized by the will—elected to take the property in kind. They did this not only before there was any actual conversion by sale (for such actual conversion has never taken place) but even before Hicks filed his petition which resulted in the orders and decrees here under review. After the admission to probate in California of the will of the deceased it was likewise duly admitted to probate in the state of Iowa in the district court of Monona County, where these lands were situated, and within a very short time after the death of Loyd the devisees of these lands elected to take the land as land. In due time

the widow joined therein. The written election so to take was filed in the district court of Monona County, Iowa, and that court on the third day of September, 1913, entered its judgment and decree confirming this election and decreed full and complete title to these lands in the twelve children and the widow. By this decree Charles Hicks, at all times a resident of and domiciled within the state of Iowa, was denied any interest in or to any part of these lands. Thereafter certain of the children, owners of undivided interests in these lands and tenants in common with the others, instituted their action in partition and to quiet title and made Charles Hicks a party defendant, under allegations asserting his claim of ownership to a portion of the land and denying the validity of his claim. Charles Hicks appeared and asserted title, and at the time when the probate court in California made the orders here in question, this action to quiet title was pending in the Iowa court, which subsequently entered its decree conclusively adjudicating that neither Charles Hicks nor the executors of the last will and testament of George E. Loyd, deceased, had any title or interest in or to the Iowa lands, and fully establishing the title to these lands in the widow and the twelve children. This last statement of fact is not made as having any bearing upon the determination, which must here be based upon facts existing at the time the orders appealed from were made. But it tends to establish the improvident nature of those orders of the probate court of California in attempting to force the executors to do what the courts of Iowa would not have recognized, and to punish them by ousting them from their offices for their refusal to obey the first order directing them to sell the lands, from which order they had duly taken their appeal.

These, then, are the facts, and under them not the slightest doubt can be entertained but that the parties in interest and owners of this land under the will of the deceased effectuated, as they had the right to effectuate, a reconversion which wholly superseded the equitable conversion, which destroyed all power of sale vested in the executors and left the beneficiaries under the will the owners of the whole legal and equitable title. The law controlling the foregoing statement is, of course, the Iowa law, but the decisions of the Iowa courts leave the matter in no doubt. Thus in *Allee* v. *Bullard*, 123 Iowa, 274, [98 N. W. 889], the question presented

was whether the will effectuated an equitable conversion and whether the election of the devisees under the will to take the land as land reconverted it into land and vested the fee title in the devisees, notwithstanding the power and order of sale contained in the will. In the Atlee case the devisees had all elected to take the land as land and not to have it sold. One of the questions presented was whether a judgment was a lien on this land. If the equitable conversion obtained, the land was personal property and not subject to the judgment lien. If the reconversion back into land obtained, it was argued that the judgment lien would attach. Says the supreme court of Iowa: "The parties to this action, being all who have any right to claim under the will of the testator, having elected to treat the property as real estate instead of personalty, must be held to have effected a reconversion, if, indeed, an equitable conversion ever took place. We must therefore hold that the judgment in favor of the German-American Bank and George Marshall became liens upon the interest or share of Fannie Bullard in said lands," and the conclusion was that the lien of the judgment attached. In *Boland* v. *Tiernay,* 118 Iowa, 59, [91 N. W. 836], the devisees, a brother and sister, had elected to take the land and the brother had transferred his interest in one of the eighty acres to his sister. The estate was closed, but the executor deeming it his duty to do so under the power conferred upon him by will, made a sale of the land and accounted for the proceeds of the sale. It was contended by the sister that the sale was null and void. The supreme court of Iowa, with elaboration and approval, reviews many authorities from other states in harmony with the Iowa cases, and declares: "The eighty acres of land in Plymouth County, though constructively, was not actually, converted. The title, by the terms of the will, passed to the beneficiaries, with the power of sale by the executor added. That power was for the purpose of administration only, and failure to exercise it cannot be permitted to defeat the devise. As said in *Greenland* v. *Waddell,* 116 N. Y. 242, [22 N. E. 367, 15 Am. St. Rep. 400]: 'The executors took no title in the real estate as such. They were vested with a power to deal with it as personal estate for the purpose of the execution of the trust created by the will.' Appellant seems to think that conferring the power of sale on the executor necessarily passed the title to him. Regardless of who acquired the

title, he took exactly that quantity of interest which the purposes of the trust required. In whomsoever the title vested, whether it was allowed to descend by operation of law, or was transferred to the executor, or descended to the devisee, it was for the purpose specified. (*Ebey* v. *Adams*, 135 Ill. 80, [10 L. R. A. 162, 25 N. E. 1013], 2 Jarman on Wills, 305, 306.) The language used by the court in *Eneberg* v. *Carter*, 98 Mo. 647, [14 Am. St. Rep. 664, 12 S. W. 522], is particularly applicable: 'In the present case there was certainly no express devise in fee to the executor, nor are there any such words in the will as to raise a fee in him by force of a strong implication. Therefore the fee remained in the heirs at law, both by the devise to them as well as by the statute of descents, until it should be divested by a sale by the executor under the terms of the will; and until such sale no conversion could occur.' Nothing has happened to divest the plaintiff of the title to this land, acquired under the will and the conveyance of her brothers. This holding that the fee title in such a case passes to the beneficiaries, subject only to the power of sale, which may be defeated by a reconversion, is supported by the courts of other states. . . . If those who take under a will may thus dispose of their interests by conveyance or sale—as is conceded by appellant—we can think of no reason for depriving them of the right to elect to take the thing devised themselves, rather than the proceeds derived from its sale. If the right to the proceeds depends upon some contingencies, of course the election before may not take effect until such contingency is ended."

We have quoted thus at length from the decisions of the supreme court of Iowa because, for the reasons already given, its law is controlling upon this question. But that it is the universal law wherever the principles of English equity obtain will be established beyond peradventure by reference to such cases as *Bank of Ukiah* v. *Rice*, 143 Cal. 265, [101 Am. St. Rep. 118, 76 Pac. 1020]; *Harris* v. *Ingalls*, 74 N. H. 342, [68 Atl. 34]; *Griffith* v. *Witten*, 252 Mo. 627, [161 S. W. 713]; *Howell* v. *Tompkins*, 42 N. J. Eq. 305, [11 Atl. 333]; *Duckworth* v. *Jordan*, 138 N. C. 520, [51 S. E. 109]; *Meekins* v. *Branning Mfg. Co.*, 224 Fed. 202. This reconversion may take place at any time during the period of constructive conversion and prior to the actual conversion by sale. (*Griffith* v. *Witten, supra.*) It is effected when all the parties bene-

ficially interested in the property, by some explicit and bind-
ing action, direct that no actual conversion shall take place
and elect to take the property in its original form.  (*Duck-
worth* v. *Jordan, supra.*)

Did all the parties beneficially interested so indicate their
election, or is Charles Hicks such a party beneficially in-
terested, for whose nonjoinder the reconversion could not in
law or equity take place?  What has previously been said
touching the well-setttled doctrine that a pretermitted heir
does not take under a will but in hostility to it should be in
and of itself a sufficient determination against this asserted
right of Hicks.  But the cases are numerous and uniform to
like effect.  The question has more often arisen when a widow
has been put to her election between her legal dower or other
rights and the rights conferred upon her by will, and it is
universally held that she is bound by her election.  If she
takes under the law she can invoke the will in no way.  If
she takes under the will she can have no recourse to her rights
under the law, and many of these cases have to do with
attempts to enforce equitable conversions.  Thus in *Cun-
ningham's Estate*, 137 Pa. St. 621, [21 Am. St. Rep. 901, 20
Atl. 714], the testator directed his real property to be con-
verted into cash and distributed.  The widow elected not to
take under the will.  Under the law she was entitled to take
a larger percentage of the personalty than the realty.  She
contended that the will, notwithstanding her election to take
under the law, effectuated an equitable conversion of the
realty, and that one-half of the proceeds inured to her benefit.
Said the court: "The election which the widow is required to
make is between rights, not between benefits.  She has the
right to abide by her husband's disposition of his property,
or the right to override it and claim under the intestate law.
These rights are inconsistent and cannot coexist. . . . The
law does not permit her to say there is a will for conversion,
and no will as to her share."  The supreme court of Ken-
tucky in *Barnett's Admr.* v. *Barnett's Admr.*, 58 Ky. [1 Met.]
254, reaffirming the same doctrine, gives an added reason in
the following language: "Although a new character may
have been in the most unequivocal terms impressed upon
the property by means of the trust for conversion, yet such
constructive character is liable to be determined by the act
of the persons beneficially entitled, who may at any time

before the conversion actually occurs elect to take the property in its then condition. The right is wholly inconsistent with that claimed on behalf of the widow. For if the devisees before a conversion of the lands should elect to take the property on its actual, instead of its destined state, a conversion would be thereby prevented, and the character of the property changed from that impressed upon it by the testator to that which it actually possesses.'' In *Ashelford* v. *Chapman*, 81 Kan. 312, [105 Pac. 534], it is said: ''If the widow take under the statute, the principle that there is no will as to her forbids that she should enlarge any of her rights under the statute by an appeal to the will. She is a stranger to it, and has no standing to compel others who take under the will to comply with provisions which might increase her distributive share in the estate.'' To the same effect are *Geiger* v. *Bitzer*, 80 Ohio St. 65, [17 Ann. Cas. 151, 22 L. R. A. (N. S.) 285, 88 N. E 134], *Northrop* v. *Marquam*, 16 Or. 173, [18 Pac 449], and *James* v. *Hanks*, 202 Ill. 114, [66 N. E. 1034], where the husband, as heir of his wife, was insisting upon the same doctrine as is urged by respondent, and it is said: ''If a testatrix directs her lands to be sold for the particular purpose of paying certain gifts to legatees, the conversion does not give the proceeds the quality of personalty for the benefit of her husband, as her heir at law.'' Underlying all these cases is the same principle, of strict applicability to this respondent—the principle that one who does not take under a will can claim no benefits from that will. So here the testator's clear and unmistakable design was that his children and widow should have the Iowa property to the exclusion of Charles Hicks. What the law gives him as a pretermitted heir he takes outside of and in hostility to the will, and it is not open to him to invoke nor to ask the aid of the court in probate to enforce any of the provisions of the will for his benefit.

But it is next said that the respondent had the right to invoke the provisions of the will because he was a party interested in the subject matter, and, in this, reliance is placed upon *Atlee* v. *Bullard*, 123 Iowa, 274, [98 N. W. 889]. A reading of the case demonstrates how fallacious respondent's effort is to detach a single phrase from its context, for only those are interested in the subject matter who are the beneficiaries of the particular devise under the will. And, finally,

it is said that the election of the devisees and widow was nugatory, because there was a time when one of the children —a Mrs. Gent—did not join in the formal election to take the land as land, though subsequently she did so. The sole effect of a failure of all the parties in interest to join in the election is that no reconversion takes place and the equitable conversion still stands. But this is no bar to a subsequent reconversion by the act of all the parties in interest before sale, since, being all the parties in interest, no one has or can have legal or equitable right to complain of the election when finally made.

3. It appears, therefore, that the order of the court directing these executors to sell the lands in Iowa was improvidently made, and should never have been made by virtue of the fact that all the parties in interest had elected to take those lands in kind. It appears further that the executors duly appealed from this order, as they had the right to do, and that their appeal suspended the operation of the order, and that nevertheless the court revoked their letters testamentary. Nothing need be added to these facts, which in and of themselves condemn as illegal this last order and decree appealed from.

Wherefore the order appealed from in L. A. No. 4488 and the decree appealed from in L. A. No. 4489 are both, and each is, reversed.

Shaw, J., Sloss, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.