[Civ. No. 1929. Fourth Appellate District.—December 17, 1935.]

GEORGE B. McCAUGHNA, Respondent, v. PETER P. BIL-HORN, as Executor, etc., Appellant.

Sherman & Sherman for Appellant.

Patterson & Montgomery and W. S. Scully for Respondent.

MARKS, J.—This is an action for declaratory relief in interpreting the language of a will, and upon a rejected claim against the estate of Nellie M. Bilhorn, deceased. The plaintiff had judgment and the executor has appealed.

Peter P. and Nellie M. Bilhorn were husband and wife. Plaintiff is the brother of Nellie. Mr. and Mrs. Bilhorn were residents of Chicago, Illinois, up to the time of the death of the latter on May 25, 1932.

On November 2, 1907, Mrs. Bilhorn executed her will before two subscribing witnesses. This will appointed Peter P. Bilhorn as executor and left him all of the property of the testatrix. On May 19, 1932, Mrs. Bilhorn executed an holographic will which appointed her husband executor, left him all her personal property and certain described real property in California. It also contained the following: "I Nellie M. Bilhorn do hereby will and bequeath to my husband . . . and

request that he sell the Ranch on Western Avenue Los Angeles at the earliest convenience and give to each of my brothers Geo B and John D McCaughna the price of 40 acres. The amount of 40 acres given to my Brother Geo B McCaughna shall include the contract of $15,000 given him by me to be paid when place is sold . . . ''

The will of November 2, 1907, was admitted to probate in Cook County, Illinois, and Peter P. Bilhorn was appointed executor. The holographic will was not entitled to probate there because it was not witnessed. Plaintiff offered the holographic will for probate in Los Angeles County. Peter P. Bilhorn filed a petition in the same proceeding seeking admission to probate of the will of November 2, 1907, as a foreign will, and filed a contest of the holographic will. The probate court admitted both wills to probate, the holographic will ''in so far as its terms are inconsistent with the attested will dated November 2, 1907'', and that will ''in so far as its terms are consistent with the terms of the said holographic will'' and issued letters testamentary to Peter P. Bilhorn who qualified and entered upon the performance of his duties as executor. This order has become final and is not now before us and no question is raised as to its correctness.

Plaintiff and his wife filed a contingent claim against the estate for $15,000, under a contract dated April 24, 1928. In the claim it was expressly stated that the claimants did not waive the right to take under the holographic will. They also waived the claim upon the sole condition that final distribution be had in accordance with the terms of the holographic will. The claim was rejected by the executor and this action followed. Prior to the institution of the action Mrs. McCaughna assigned her interest in the debt and claim to plaintiff.

The contract was between Peter P. Bilhorn and Nellie M. Bilhorn as first parties and George B. McCaughna and Mary E. McCaughna as second parties. It recited that the first parties were the owners of land in Los Angeles County (the same land mentioned in the holographic will) ; that it had been occupied by the second parties since September 1, 1912; that the second parties, with the consent of the first parties, had erected a dwelling and garage on the premises in 1912 and another dwelling in 1922 under an agreement that these buildings would be removed on request of the first parties; that the second parties proceed to move the buildings within four

months; that the first parties will pay to the second parties $15,000 in full payment of all claims and demands, "payment to be made from moneys received from said sale". The other provisions of the contract are not material here.

The trial court rendered judgment in favor of plaintiff. The judgment contains the following: "That George Mc-Caughna, the plaintiff have and recover of and from Peter P. Bilhorn, Executor of the Estate of Nellie M. Bilhorn, deceased, the sum of Fifteen Thousand Dollars ($15,000.00) with interest thereon at the rate of seven per cent (7%) per annum from and after May 25, 1932, . . . It is further adjudged and decreed by way of declaratory relief that the devise to the plaintiff, George B. McCaughna, under the holographic will of the testatrix, Nellie M. Bilhorn, dated May 19, 1932 and admitted to probate in case number 129,698 in the Superior Court of the State of California, in and for the County of Los Angeles, reading as follows: 'and request that he (the executor) sell the Ranch on Western Avenue Los Angeles at the earliest convenience and give to each of my brothers Geo. B. and John D. McCaughna, the price of 40 acres', is a devise of real property and not a devise of personalty. That no equitable conversion of the said property so devised to the plaintiff arises or is effected under the terms of the said holographic will of May 19, 1932; that the property described in said will as the 'Ranch property on Western Avenue, Los Angeles' is in fact real property, legally described as follows: (Description). That the plaintiff is entitled to take and receive in due course of administration of said Estate of Nellie M. Bilhorn in the probate proceeding Number 129,698, in the State of California in and for the County of Los Angeles, the said property devised to him under said holographic will of May 19, 1932; that said property so devised to the plaintiff became vested in him upon the death of the testatrix, Nellie M. Bilhorn, subject to the administration of her Estate in California. That in the event the plaintiff shall elect to take the devise under said will he shall waive his claim for money judgment herein given in accordance with the provision of said will."

The executor presents three grounds for a reversal of the judgment: (1) that there was an equitable conversion of the forty acres of land to be sold for plaintiff whereby the courts must construe the holographic will as bequeathing personal property and not devising real estate; (2) that the probate

side of the superior court had exclusive jurisdiction of a proceeding to construe the will and determine the proper distribution of the estate under its terms; (3) that there was no consideration for the contract whereby deceased promised to pay plaintiff $15,000.

Section 124 of the Probate Code (formerly section 1338 of the Civil Code) provides as follows: "When a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of the testator's death." This section is merely declaratory of a like rule in equity long recognized in English speaking countries. (*Estep* v. *Armstrong*, 91 Cal. 659 [27 Pac. 1091]; *Estate of Loyd*, 175 Cal. 699 [167 Pac. 157].)

It is well settled that where it clearly appears from a will that the testatrix intended that real property be sold during administration and the proceeds of the sale be given to an heir and the bequest does not fail, an equitable conversion of the land into money occurs and the will bequeaths personal property and does not devise real estate. In *Estate of Pforr*, 144 Cal. 121 [77 Pac. 825], the Supreme Court said: "The provision for the sale of the property and the distribution of its proceeds among the six beneficiaries operated as an equitable conversion of the real estate into personalty. (Civ. Code, sec. 1338.) This result is not overcome by reason of the testator having used the word 'desire' instead of 'direct' in authorizing the sale. The words 'I desire' that my real estate shall be sold are the equivalent of the words 'I will' that it be sold. (*Appeal of City of Philadelphia*, 112 Pa. 470 [4 Atl. 4].) While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor. (*Estate of Marti*, 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071].)

"Whether such conversion is effected depends upon the intention of the testator as gathered from the entire provisions of his will. If it is apparent from its terms that it was his will that the estate be sold and the proceeds given to his beneficiaries, an equitable conversion results, even if the direction for the sale is not imperative. (*Dodge* v. *Pond*, 23 N. Y. 69.) 'The question of conversion is a question of intention, and the real question is, Did the testator intend his land should be converted into money at all events before distribution?'

(*Wurts* v. *Page,* 19 N. J. Eq. 365, 375.) Mr. Pomeroy (Equity Jurisprudence, sec. 1161) says: 'In fact the whole result depends upon the intention. If by express language, or by a reasonable construction of all its terms, the instrument shows an intention that the original form of the property shall be changed, then a conversion necessarily takes place.' '' (See *In re Walkerly,* 108 Cal. 627 [41 Pac. 772, 49 Am. St. Rep. 97] ; *Fatjo* v. *Swasey,* 111 Cal. 628 [44 Pac. 225] ; *Bank of Ukiah* v. *Rice,* 143 Cal. 265 [76 Pac. 1020, 101 Am. St. Rep. 118] ; *Estate of Loyd, supra.*)

█ While the doctrine of equitable conversion is well established, its limitations are also well settled. The rule is stated in 6 R. C. L. 1071, as follows: ''While the doctrine of equitable conversion is well settled on principle and reason, and is recognized in numerous cases, the sphere or limitation of its application is equally well established, and should be observed. A limitation as well settled on reason and authority as the doctrine itself is the principle that, since the sole purpose of the doctrine in the case of a will is to effectuate the intention of a testator, it cannot be invoked when his intention fails or is incapable of accomplishment by reason of illegality, lapse, or other cause. The reason of the rule then ceasing, the rule itself no longer obtains. . . . Therefore, where a testamentary disposition or any part thereof fails, the property devised retains its original character, and goes to the heir or next of kin as real estate or personalty, as the case may be. And nothing short of a clear intention, to be collected from the will, that land shall be sold and converted into money before division, whether the particular purpose fails or not, will be sufficient in equity to change the character of the property.''

In *McGlynn* v. *McGlynn,* 101 N. J. Eq. 66 [137 Atl. 434], it was said: ''While it was the testator's intention that all his real estate should be sold and converted, nevertheless, as to so much of the trust in perpetuity for the members of the testator's family, held to be invalid, the conversion failed *pro tanto,* and only so much of the proceeds of the sale of the real estate, applicable to the trust, as may be required to maintain the annuity, and for that limited purpose only, is to be treated as personal property, and upon the termination of the annuity it will resume its original character of real property and pass to the heirs at law. The conversion was

solely for the purpose of carrying out the testamentary scheme, and with respect to matters in which the scheme failed the conversion failed. The principle is well established in this state in *Roy* v. *Monroe*, 47 N. J. Eq. 356 [20 Atl. 481], followed in *Canfield* v. *Canfield*, 62 N. J. Eq. 578 [50 Atl. 471], the essence of which is set forth in this headnote:

" 'Where a testator orders his land to be sold, the conversion will, unless a contrary intention distinctly appears, be deemed to have been directed merely for the purposes of the will, and consequently, if any of those purposes fail, so that the money does not pass under the will, it will, in equity, be considered land and be given to the heir.' "

The Court of Appeals of New York applied the same rule in *Read* v. *Williams*, 125 N. Y. 560 [26 N. E. 730, 21 Am. St. Rep. 748], where it was said: "The gift failing, the purpose of the conversion ceased, and the direction to sell the real estate was no longer (in)operative. The conversion, of course, was not directed for the purpose of distribution of the estate as money among the next of kin. The testatrix never intended that they should take it in any form. The case falls within the general principle declared in many cases, that a power of sale in a will, however peremptory in form, if it can be seen that it was inserted in aid of a particular purpose of the testator, or to accomplish his general scheme of distribution, does not *ipso facto* operate as a conversion where the scheme or purpose fails by reason of illegality, lapse, or other cause. In that case the property retains its original character, and it goes to the heir or next of kin as real estate or personalty, as the case may be."

The following cases adopt the same rule: *Fifield* v. *Van Wyck's Exr.*, 94 Va. 557 [27 S. E. 446, 64 Am. St. Rep. 745]; *In re Hopkins*, 1 Ch. 35, 13 British R. C. 881; *Estate of Burden*, 107 Misc. 416 [177 N. Y. Supp. 748]; *In re Van Zandt's Estate*, 142 Misc. 663 [255 N. Y. Supp. 359]. See, also, *Ingraham* v. *Chandler*, 179 Iowa, 304 [161 N. W. 434, L. R. A. 1917D, 713]; *Crerar* v. *Williams*, 145 Ill. 625 [34 N. E. 467, 21 L. R. A. 454].

We have not been cited to, nor have we found, any California case in which the question we are considering has been directly decided. It was discussed with approval in *Estate of Gracey*, 200 Cal. 482 [253 Pac. 921]. The Supreme Court was of the opinion that as the testamentary document considered

in that case did not contain a command that the real property involved be sold, the absence of such command in itself furnished sufficient ground for refusing to apply the doctrine of equitable conversion.

 It seems evident from a reading of the holographic will that deceased intended that the 180 acres be sold for the purpose of giving the value of 40 acres or two-ninths of the sale price (to include the $15,000 contract obligation) to plaintiff, the value of 40 acres, or two-ninths of the sale price to John D. McCaughna, another brother, and the balance to Peter P. Bilhorn, the husband. It is clear that the sale of the land was authorized for the sole purpose of carrying into effect the two gifts to the two brothers as made in the holographic will and of carrying out the purposes of that document.

Counsel seem to concede that the law of California will govern a devise of real estate situated here; that the law of Illinois, the domicile of deceased, will govern bequests of personal property no matter where situated; that if the holographic will be construed as containing a devise of real estate to plaintiff, the land or an undivided interest in the 180 acres will be distributed to him under the terms of the holographic will which is valid in California; that if this will be construed as effecting an equitable conversion of the interest in the land into personal property, it will be distributed to the husband by the courts of Illinois under the terms of the witnessed will of 1907, the holographic will not having been legally executed according to Illinois law and being void there. For the purpose of this opinion we will assume that these premises and conclusions are correct.

If we adopted the theory of an equitable conversion of the land into money we would defeat the clear intention of the testatrix as expressed in her holographic will, deprive both her brothers of the shares in her estate which she clearly intended them to receive, and give to her husband a considerable inheritance which she intended to go to others. Under these circumstances the doctrine of equitable conversion should not be held to apply to this case. Thus we can carry out the intention of the testatrix, and give full force and effect to her holographic will instead of defeating her purpose and rewriting her will for her. For the reasons just given and under the authorities last cited the trial court was correct in its conclusion that the holographic will devised to plaintiff an

interest in real property and that no equitable conversion occurred.

Plaintiff is entitled to a two-ninths interest in the 180 acres of land, or a two-ninths of the net selling price should it be sold during the course of administration, subject of course to any deduction for taxes, debts, expenses of administration and like charges, if by necessity any of them be imposed thereon.

■ The question of the jurisdiction of the equity as distinguished from the probate side of the superior court to entertain this action for a construction of the terms of a will is a new one in California. It is conceded that such construction may be had in probate. Appellant urges that this jurisdiction must be held to be exclusive.

Section 1060 of the Code of Civil Procedure provides in part as follows: ''Any person interested under a . . . will . . . or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract. He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force of a final judgment. . . . ''

The general scope of the proceeding for declaratory relief, the sufficiency of pleadings, the form of judgment and other such matters may be learned by a study of the following cases: *Blakeslee* v. *Wilson*, 190 Cal. 479 [213 Pac. 495], *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105 [287 Pac. 475], *James* v. *Hall*, 88 Cal. App. 528 [264 Pac. 516], *Lane Mortgage Co.* v. *Crenshaw*, 93 Cal. App. 411 [269 Pac. 672], *Oldham* v. *Moodie*, 94 Cal. App. 88 [270 Pac. 688], *Andrews* v. *City of Piedmont*, 100 Cal. App. 700 [281 Pac. 78], *Stenzel* v. *Kronick*, 102 Cal. App. 507 [283 Pac. 93], *Transport Oil Co.* v. *Bush*, 114 Cal. App. 152 [1 Pac. (2d) 1060], and *Welfare Inv. Co.* v. *Stowell*, 132 Cal. App. 275 [22 Pac. (2d) 529]. As the

legislature has provided that an action for declaratory relief may be brought by any person interested under a will, and as a real controversy has arisen between plaintiff and appellant as to plaintiff's rights under a will, we can see no reason why the superior court sitting in equity should not assume jurisdiction over such controversy if exclusive jurisdiction be not vested in the superior court sitting in probate, it having taken jurisdiction of the administration of the estate.

Section 1 of article VI of the Constitution provides for the existence of superior courts in the state and section 5 of the same article provides their jurisdiction. There is no distinct probate court in this state. (*In re Burton,* 93 Cal. 459 [29 Pac. 36].) The superior court finds its authority over probate matters in the provisions of the Constitution. It is not a statutory tribunal when sitting in probate. (*Heydenfeldt* v. *Superior Court,* 117 Cal. 348 [49 Pac. 210].) The same is true of the superior court when sitting in equity. When so engaged the court derives its authority from the Constitution. While this is true the legislature may create new rights or recognize new occasions when cases in equity may arise. (*Spreckels* v. *Hawaiian etc. Co.,* 117 Cal. 377 [49 Pac. 353].) In many jurisdictions parties have been given declaratory relief under general equity powers without special statutory authority. As section 1060 of the Code of Civil Procedure does not attempt to change the jurisdiction of the superior courts but merely creates a statutory remedy where one did not exist before by authority of express law, we can see no reason why the jurisdiction over suits for the declaration of rights under a will may not be given to the superior courts when sitting in equity as well as to the same courts when sitting in probate. This is especially true in view of section 1062 of the Code of Civil Procedure which provides: "The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts."

There need be no conflict in authority between the two sides of the superior courts when declaring rights and duties under wills if the power be prudently exercised by the judges of those courts when sitting in equity. Where the declaration

of the rights and duties under a will is the only matter before the court the judges sitting in equity might with great propriety leave the settlement of the controversy to the probate side of the court. (*Metsker* v. *Metsker*, 320 Ill. 547 [151 N. E. 539].) This power is given them by section 1061 of the Code of Civil Procedure which provides: ''The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.'' If such a course is intelligently followed the probate side of the courts need not be embarrassed by decisions from the equity side.

 In the instant case the superior court sitting in probate could not settle the entire controversy among the parties. Plaintiff had presented his claim against the estate and it had been rejected. He had to bring his action on the claim in the civil side of the court or be foreclosed from recovery by the statute of limitations. An action on the claim alone might have been construed as an election to take under the contract and not under the will. He could not take under both and he was uncertain of his rights under the will. If he proceeded in the probate court to have his rights determined under the will it might very well happen that before a final decision there his right of action on the claim might have been barred. Under these circumstances it was proper for plaintiff to bring this action and for the superior court not sitting in probate to take jurisdiction of it and fully determine the controversy.

 Appellant urges that the evidence shows that no consideration was given for the contract whereby deceased and her husband promised to pay plaintiff and his wife $15,000. We have studied the record and have found evidence supporting the finding that the contract was supported by a consideration. This being so we cannot disturb the judgment on that score.

 Appellant complains of the ruling of the trial judge in admitting in evidence a contract bearing on its face pencil marks which appellant maintains constituted an unexplained material alteration of the instrument. When the objection was made the trial judge had the document before him. He remarked that the pencil marks appeared to be largely erased without mutilating the typewriting. An examination of a

photograph of the instrument sustains this conclusion. The matter was one within the sound discretion of the trial judge.

█ The trial court found, in its finding number eleven, that the real property in question here was the separate property of deceased. Appellant complains of this as it might affect his rights on distribution. This finding is entirely unnecessary here. The appraised value of decedent's property in California was fixed at about $210,000. It was stipulated that the 180 acres of land were worth $1,000 per acre. This would make the land devised to each brother worth $40,000. If the finding that the property was separate could in any way affect appellant's rights, it may be stricken from the record without impairing the judgment.

Finding number eleven is ordered stricken from the findings of fact and conclusions of law.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 13, 1936.