CLEMENTS *v.* NEBLETT.

5-3127                                          372 S. W. 2d 816

Opinion delivered December 9, 1963.

*Dinning & Dinning,* for appellant.

*David Solomon,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation relates to the changing of the beneficiary in several insurance policies by a subsequent will. W. L. Clements, a resident of Phillips County, owned considerable real property in Desha and Phillips Counties, and seven insurance policies payable to his estate. One of these policies had been issued by the Mutual Life Insurance Company of New York in the amount of $25,000.00, and the other six policies, each in the amount of $10,000.00, had been issued by the Equitable Life Assurance Society of the United States.

Approximately two weeks before his death,[1] Mr. Clements made a holographic will, the provisions pertinent to this litigation, reading as follows:

"I hereby will to my wife Sarah Clements a $25,-000.00 insurance policy made payable to my estate with the Mutual Life of N. Y. and written by Jim Hudson, Policy in my Lock box at the Phillips Nat. Bank where all papers are.

"I hereby will to my nieces and nephew all real estate in Desha County and Phillips County, Ark. namely Katherine Clements now of Memphis, Tenn., Mrs. Roy Turner of Lexa, and Lawrence Clements of Barton together with $60,000.00 worth of Insurance with the Equitable Life Insurance Co. with instructions that all my debts and taxes be paid. And all the property be held together for 5 years and rented to my present tenant for that period of time if he wants it on present terms less the clause on clearing in his present contract."

No children were born to the marriage between Mr. and Mrs. Clements.

Petition was filed in the Probate Court of Phillips County for the probating of this instrument, and the will was duly admitted to probate, Lawrence Clements and Harry Neblett being named executors, as provided in the will. When the inventory was filed, no mention was made of the insurance policies, and appellant filed her exceptions, and subsequently, on May 5, 1961, filed her petition for statutory allowances and assignment of dower, alleging that she was the surviving widow of W. L. Clements; that she had renounced under the will,[2] and was entitled to one-half of the gross value of all property owned by her husband at the time of his death, including one-half of all insurance proceeds payable to

---

[1] Mr. Clements died on November 1, 1959, less than a year after his marriage to appellant.

[2] Ark. Stat. Ann. § 60-501 (Repl. 1961) provides: "When a married man dies testate as to any part of his estate, or when a married woman dies leaving as her last will one executed prior to her marriage, the surviving spouse shall have the right to elect to take against the will and to take such part of the property as he or she would have taken had the deceased spouse died intestate."

his estate. After the filing of various pleadings, counsel entered into a stipulation, as to pertinent facts, and the Probate Court rendered its decision on the basis of the stipulation,[3] no oral testimony being heard. Thereafter, the court entered its findings as follows:

"That the proceeds of the six (6) policies of insurance issued by The Equitable Life Assurance Society of the United States on the Life of W. L. Clements are not assets in the hands of the Executors, since the Testator, W. L. Clements, changed the beneficiaries thereof by his Last Will and Testament, and such proceeds are the property of Katherine Clements, Mrs. Roy Turner and Lawrence Clements as beneficiaries thereof. That the widow, Sarah H. Clements, had no vested interest in the six (6) policies of insurance issued by Equitable Life Assurance Society of the United States. That the proceeds of the insurance policy issued by The Mutual Life Insurance Company of New York on the life of W. L. Clements are not an asset of the Estate of W. L. Clements, since the Testator changed the beneficiary by his Last Will and Testament, and such proceeds are the property of Sarah H. Clements, as such beneficiary, and that the Executors should deliver to her such proceeds they now hold. That the widow, Sarah H. Clements, is entitled to one-half (½) of the personal property of the Estate as dower and shall not be charged with any claims or costs of administration * * *"

"* * * that Sarah H. Clements, as widow of W. L. Clements, is allotted as dower one-half (½) of the real property owned by W. L. Clements at the time of his death, subject to one-half (½) of the mortgage indebtedness on said lands, * * *"

From the order entered, appellant brings this appeal. For reversal, appellant argues two points, as follows:

---

[3] This, *inter alia*, reflects that all taxes and claims filed against the estate have been paid, and the estate is solvent.

## I.

"The proceeds of the seven (7) policies of insurance, payable to the estate of the decedent, passed to his executors as assets of the estate subject to the dower interest of the appellant as provided under Sections 60-501, Arkansas Statutes.

## II.

"The devise to the appellees 'of all real estate in Desha County and Phillips County, Arkansas, together with $60,000.00 of insurance with the Equitable Life Assurance Society of the United States with instructions that all my debts and taxes be paid' constituted a contingent devise of property conditioned upon the payment of the debts and taxes."

We proceed to a discussion of these points in the order listed.

## I.

In all of the policies of insurance here involved, Clements reserved the right to change the beneficiary, and this right existed at the time of his death. We think this point is controlled by *Pedron* v. *Olds,* 193 Ark. 1026, 105 S. W. 2d 70. That case involved a controversy between the wife and daughter of the insured, relative to the proceeds of insurance policies in which the wife was named as beneficiary; subsequently, however, the insured executed a will, designating his daughter as beneficiary. In holding with the daughter, this court said, "Did the will have the effect of changing the beneficiary? The lower court decided that it did.

"It is conceded by both parties that the beneficiary named in the policies had no vested interest, because under the provisions of the policies, he had the undoubted right to change the beneficiary in the manner therein provided. Under such circumstances, it is generally held that the beneficiary has no vested interest in the insurance during the lifetime of the insured, and such is our own holding. We do not appear to have heretofore de-

cided the exact question here presented, that is, whether the insured may change the beneficiary, where the power to change is given in the policy, without the consent of the beneficiary, by a testamentary provision, or must he pursue the method prescribed in the policy. The cases from other jurisdictions are in hopeless conflict, but it seems to us that the better rule is with the cases that hold that the insured may change his beneficiary by valid will.  *  *  *''

"*  *  *  There are numerous cases holding that a policy may be assigned by the insured without the consent of the beneficiary where there is no vested interest in the beneficiary, and if the insured quits paying the premiums and the policy lapses, the beneficiary loses his interest therein along with the insured, and we can perceive no valid reason why, under similar conditions, a testamentary provision may not have the effect of changing the beneficiary. In the case before us, the beneficiary had no vested interest during the lifetime of the insured, and neither did the legatee under the will. Both provisions became effective on his death. The provision in the will conflicted with the provision in the policy designating appellant as beneficiary, and this being the insured's last expression on the subject, it ought to control.''

This holding was reiterated in *Eickelkamp* v. *Carl*, 193 Ark. 1155, 104 S. W. 2d 814. Eickelkamp held a life insurance policy which named his wife as beneficiary. This policy, likewise, contained the usual provision that the insured could change his beneficiary by giving written notice to the company at its home office, and the change would become effective upon the company's endorsement of the change on the policy. Thereafter, Eickelkamp and his wife were involved in an automobile collision while on a journey. Mrs. Eickelkamp died about noon, and Mr. Eickelkamp passed away some five or six hours later. At some time during that period, Eickelkamp was advised of his wife's death. He then summoned two nurses and the secretary of the hospital, and executed a will shortly before he died, in which he

changed the name of the beneficiary in the life insurance policy from his wife to her father. Suit was instituted by the father of Eickelkamp, sole heir of the deceased, who would, of course, recover the proceeds of the insurance policy if it were payable to his son's estate. We held that the change of beneficiary by will was valid, relying upon *Pedron* v. *Olds, supra.*

The Arkansas cases cited by appellant are not cases involving change of a beneficiary, or where the widow was taking against the will. Appellant cites a Missouri case, *Plummer* v. *Metropolitan Life Insurance Company,* 229 Mo. App. 638, 81 S. W. 2d 453, which does involve the change of a beneficiary in an insurance policy by testamentary provision. The Missouri court held that the provision in the will changing the beneficiary in the policy was valid, and the beneficiaries named in the will were entitled to receive the proceeds as against the beneficiary named in the policy, but held that the proceeds were subject to prior payment of the decedent's debts. Appellant asserts that this is the better reasoning, but we can only say that cases from other jurisdictions are rarely relied upon when the question has already been passed upon by this court. We, therefore, hold that the provisions in the will, designating the particular beneficiaries for certain policies, had the effect of changing the beneficiary named in the insurance policies (the estate), *i.e.,* the effect was the same (between the parties) as though Clements had written to the insurance companies and followed their required procedure in changing beneficiaries. It follows, therefore, that the Chancellor was correct in holding that the proceeds of these policies did not pass to the executors as assets of the estate, and accordingly, were not subject to the dower interest of the appellant.

II.

Learned counsel for appellant vigorously contend that the devise to appellees of all real estate in Desha and Phillips Counties, together with the $60,000.00 worth of insurance, constituted only a contingent devise of the property, conditioned upon the payment of the debts and

taxes. It is asserted that the only debt that was outstanding at the time of Clements' death was a certain indebtedness to the Equitable Assurance Society, originally in the sum of $60,000.00, and secured by mortgage, executed in November, 1958, on real estate located in Desha County.[4] Appellant states:

"It is not a mere coincidence that the $60,000.00 insurance proceeds were the same amount as the mortgage indebtedness. It is not a coincidence that the insurance policies were written by the Equitable Assurance Society of the United States and the mortgage was made to the same company."

Thus, appellant asserts that Clements intended for the mortgage indebtedness to be paid from the $60,000.00, and that any other construction does violence to the intention of the testator.

Of course, the wishes of the testator, as expressed in his will, are rarely carried out where the widow elects to take against the will. It may well be that Clements intended that the indebtedness to the Equitable be paid out of the $60,000.00, with the beneficiaries named taking the balance. But, it is also evident that Clements did not intend for his wife to take any of his real property. When Mrs. Clements elected to take against the will, it became impossible for the testator's wishes to be followed. The election by appellee, of course, meant that, as to her, the husband had died intestate—*i.e.*, "there was no will." She cannot be deprived of statutory rights because of provisions in the instrument adverse to her interest—but neither can her rights be enlarged because of subsequent provisions favorable to her interest. To use an old expression, "She cannot have her cake and eat it, too." This not only seems the proper logic to employ, but is likewise supported by authority. While there are apparently no Arkansas cases dealing with this exact situation, the question has been passed upon by courts

---

[4] A number of claims were filed against the estate, and, offhand, it would appear that some of these claims represent debts incurred before the death of Clements; however, this cannot be definitely determined from the record, and is immaterial in this litigation.

of other states. In *Ashelford* v. *Chapman, et al.* 105 Pac. 534 [Kansas], the testator left a will, devising all real estate he owned in Kansas to his children, but also provided for his wife in the will. Clause 9 of the instrument was as follows:

"It is my further will that in the event at my decease I am indebted to any person or persons for the purchase price of all or any part of the real estate owned by me, or for any lien created upon any of said real estate, for the payment of the purchase price of said real estate or any part thereof, that all my children shall equally contribute out of their share or shares of my estate given and bequeathed, granted and devised to them under this, my will, an amount sufficient to pay off all of said indebtedness."

The widow renounced provisions for her benefit contained in the will, electing to take under the law, but then sought to enforce the cited clause against the children, contending that her dower should be set apart free from any liens. The Supreme Court stated:

"If provision be made for the widow in her husband's will, she shall be cited to appear and make her election whether she will accept such provision, or take what she is entitled to under the law of descents and distributions, but she shall not be entitled to both. * * * The widow's portion cannot be affected by any will of her husband, if she object thereto and relinquish all right conferred upon her by the will. [Citing statute] * * * From these statutes it is plain that a widow provided for by her husband's will, to which she has not previously consented, has the choice of two rights, one under the statute of descents and distributions, and one under the will; but she cannot have both, except, of course, in cases where such is the purpose of the will. She may take either, but the election of one is a relinquishment of the other. Her choice is between will and no will. If she take under the law, there is no will so far as her rights are concerned. Her share is carved out of the estate according to the law of descents and distributions precisely as if no will had been made. Then the

will operates upon the residue. *The will of what remains after she has been satisfied may create rights, and may impose obligations, but she is a stranger to them.*[5a] Her election in effect partitions the estate into two separate and independent domains; one governed exclusively by the statute of descents and distributions, and one governed exclusively by the will. She occupies one, the beneficiaries of the will occupy the other, and there are no reciprocal relations between them. The beneficiaries of the will owe her no duty under the will, because she renounced all rights under the will, became an alien to it, and betook herself to her own peculiar demesne. *She cannot invade their territory, and demand of them anything secured or enjoined by the will, because she satisfied every claim she possesses when she elected to take according to law.*"[5b]

Similarly, in the New York case, *In Re Campbell's Estate,* 13 N.Y.S. 2d 773, it was held that the testator's widow, who renounced a legacy to her of interest in a lodging house by electing to take dower in the testator's estate, could not enforce a condition in the will which bequeathed half of the testator's lodging house business to his son, with the provision that the son should conduct the entire lodging house business for the benefit of other members of the testator's family, so long as they desired, without charge. As the court stated,

"The condition written by the testator in his will was limited to testamentary benefits and solely to the members of his family who accepted such testamentary benefits. The widow by her rejection of the legacy is, therefore, excluded from the right to enforce the condition."

In Volume 97, C.J.S., Section 1288(b), Pages 136 and 137, we find:

"Generally, the widow's renunciation of her husband's will precludes her from claiming or accepting any benefits thereunder, * * * and the provisions

---

[5a, 5b] Emphasis supplied.

made for her in the will lapse, or become immaterial, becoming in effect, obliterated from the will, * * *.

"The rule precluding the widow from claiming benefits under the will has been applied to such benefits as a charge for her support, a provision for a home or its occupation, for income, and annuity, or for her funeral expenses. Renunciation operates as an extinguishment of trust provisions solely for the benefit of the person renouncing, and nullifies the interest of the surviving spouse as an income beneficiary of a trust created for her and others; and it also extinguishes a grant of a general power of appointment which otherwise might be exercised by the person renouncing to the benefit of his own estate.

"Moreover, a widow, who has renounced the will, may not, in order to increase her distributive share, compel persons taking under the will to comply with provisions therein, or an executor to make a sale of property or to serve for a nominal fee; and where a lease is made to the widow to effectuate provisions in the will for her benefit, by renunciation of the will she loses all rights both under will and under lease."

Since, as far as Mrs. Clements is concerned, her husband died intestate, it follows that she is entitled to her dower interest in the lands (though devised to others), but, at the same time, she is charged with one-half of the indebtedness. In *Harris* v. *Mosley,* 195 Ark. 62, 111 S. W. 2d 563 we held that where land was mortgaged when appellant (the widow) married deceased, (as here) her dower rights in the land were subject to the rights of the mortgagee and those holding under him.

The litigation is thus disposed of, but another interesting question is presented in that the stipulation reflects that the real property on which the mortgage existed was sold by agreement of the appellant and appellees. The mortgage debt was deducted from the sales price, and the balance of the funds divided, one-half to Mrs. Clements, and the remaining one-half to the appellees. The mortgage debt was not probated as a

350

claim against estate and Mrs. Clements apparently made no objection to the sale, but rather, voluntarily joined in the execution and delivery of the deed. Appellees are of the opinion that, by this action, appellant waived any rights she might have in attempting to secure the payment of the mortgage from the general assets of the estate. In view of what has heretofore been said, a discussion of this point is unnecessary.

Finding no error, the judgment is affirmed.